# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE SURESCRIPTS ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>All Class Actions | Civil Action No. 1:19-cv-06627<br><br>Honorable John J. Tharp Jr.<br><br>Magistrate Judge Susan E. Cox |

## PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH DEFENDANT RELAYHEALTH, FOR CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS, FOR APPROVAL TO NOTIFY THE SETTLEMENT CLASS, AND FOR RELATED RELIEF

## I.    INTRODUCTION

Plaintiffs have reached a proposed settlement of their claims with Defendant NDCHealth Corporation d/b/a RelayHealth ("RelayHealth").[1]  Pursuant to the Settlement Agreement, within 30 days of the Effective Date of the Settlement Agreement, RelayHealth will pay the sum of $10 million ($10,000,000.00) in United States dollars into escrow for the benefit of the Settlement Class, and prior to and thereafter will provide material cooperation to Plaintiffs in this litigation.

Plaintiffs now move the Court to preliminarily approve the Settlement Agreement, certify the proposed Settlement Class and appoint Interim Co-Lead Counsel as co-lead counsel for the Settlement Class, and approve a program to notify members of the Settlement Class of this settlement.  Plaintiffs also ask the Court to appoint Angeion Group ("Angeion") as the notice and claims administrator for Plaintiffs in this case, and to appoint The Huntington National Bank ("Huntington") as the escrow agent and provide escrow services in this litigation.  At the Final Fairness Hearing, Interim Co-Lead Counsel will request entry of a final order and judgment ("Final Order") consistent with the Settlement Agreement, dismissing with prejudice all claims against RelayHealth and retaining jurisdiction for the implementation and enforcement of the Settlement Agreement.

## II.    BACKGROUND

Plaintiffs are pharmacies and bring this action under Sections 1 and 2 of the Sherman Act to restrain anticompetitive conduct by Surescripts, the nation's largest provider of e-prescribing services, and to remedy the harms of its decade-long anticompetitive scheme.  Plaintiffs contend that Surescripts maintained its dominant status and high pricing in the e-prescription routing and

---

[1] The Settlement Agreement is attached hereto as Exhibit A to Declaration of W. Joseph Bruckner (hereinafter, "Settlement" or "Settlement Agreement").

eligibility markets through an anticompetitive scheme aided by Defendants RelayHealth and Allscripts, which effectively foreclosed more than 70% of the markets.

Plaintiffs filed a Consolidated Class Action Complaint on December 5, 2019. (ECF No. 52.) On January 31, 2020, all Defendants moved to dismiss Plaintiffs' complaint. (ECF Nos. 76-77, 78-79, 80-81.) Plaintiffs opposed these motions on February 28, 2020 (ECF No. 90), and Defendants replied on June 12, 2020. (ECF Nos. 109, 110, 111.) RelayHealth's motion has been held in abeyance pending approval of the Settlement Agreement. The motions of the remaining Defendants have been argued and are *sub judice*.

Since filing their initial complaint, Plaintiffs have continued their investigation into the conspiracy they allege. In addition to the payment of money, under the Settlement Agreement RelayHealth will cooperate with Plaintiffs in their continued prosecution of the Action against Defendants Surescripts and Allscripts.

## III. SUMMARY OF THE SETTLEMENT AGREEMENT

After extensive arm's length negotiations, Plaintiffs agreed to settle with RelayHealth in return for its agreement to pay $10 million ($10,000,000.00) in United States dollars into escrow for the benefit of the Settlement Class, and to cooperate with Plaintiffs in their ongoing prosecution of the case. In consideration, Plaintiffs and the proposed Settlement Class agree, among other things, to release claims against RelayHealth and its affiliates, which were or could have been brought in this litigation relating to the conduct alleged in the Complaint. The release does not extend to any other Defendants or co-conspirators.

RelayHealth's cooperation includes providing Plaintiffs with documents concerning e-prescription services it produced to the Federal Trade Commission (FTC) or any other antitrust or competition authorities, meeting with Interim Co-Lead Counsel to describe in detail the principal

facts known to RelayHealth, and providing interviews, depositions, and other testimony.  (*See* Settlement Agreement, § II.A.)

## IV.   STANDARDS APPLICABLE TO PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT

There is an overriding public interest in settling litigation, and this is particularly true in class actions.  *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986) (noting that there is a general policy favoring voluntary settlements of class action disputes); *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."), *overruled on other grounds*, *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).  Class action settlements minimize the litigation expenses of the parties and reduce the strain such litigation imposes upon already scarce judicial resources. *Armstrong*, 616 F.2d at 313 (*citing Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). However, a class action may be settled only with court approval.  Before the court may give its final approval, all class members must be given notice of the proposed settlement in the manner the court directs.  Fed. R. Civ. P. 23(e).

Generally, before directing that notice be given to the class members, the court makes a preliminary evaluation of the proposed class action settlement.   The Manual For Complex Litigation (Fourth) § 21.632 (2004) explains:

> Review of a proposed class action settlement generally involves two hearings. First counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation . . . . The Judge must make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms and must direct the preparation of notice of the . . . proposed settlement, and the date of the [formal Rule 23(e)] fairness hearing.

*See also* 2 NEWBERG ON CLASS ACTIONS, §11.24 (3d ed. 1992); *see also Armstrong*, 616 F.2d at 314.

The standard for final approval of a class action settlement is whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). In weighing a grant of preliminary approval, courts must determine whether "giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(i–ii).

## V.     THE COURT IS LIKELY TO APPROVE THE SETTLEMENT UNDER 23(e)(2)

To determine whether to approve a proposed settlement under Rule 23(e)(2), courts look to the factors in the text of Rule 23(e)(2), which a court must consider when weighing final approval. *See* Fed. R. Civ. P. 23(e)(2) ("If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering" the factors set forth in Rule 23(e)(2).); *see, e.g.*, *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019). Rule 23(e)(2) requires courts to consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

4

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Factors (A) and (B) under Rule 23(e)(2) constitute the "procedural" analysis factors, and examine "the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. Factors (C) and (D) under Rule 23(e)(2) constitute the "substantive" analysis factors, and examine "[t]he relief that the settlement is expected to provide to class members...." *Id.*

Because the proposed settlement meets all factors under Rule 23(e)(2), the Court will likely grant final approval of the proposed settlement, and thus the proposed settlement should be preliminarily approved.

### 1. The Class Representatives and Class Counsel Have Adequately Represented the Class

Fed. R. Civ. P. 23(e)(2)(A) requires that "the class representatives and class counsel have adequately represented the class." Adequacy is measured by a two-part test: (i) the named plaintiffs cannot have claims in conflict with other class members, and (ii) the named plaintiffs and proposed class counsel must demonstrate their ability to litigate the case vigorously and competently on behalf of named and absent class members alike. *See Kohen v. Pacific Inv. Mgmt.*, 571 F.3d 672, 679 (7th Cir. 2009).

Both requirements are satisfied here. The interests of the Settlement Class members are aligned with those of the representative Plaintiffs. Plaintiffs, like all Settlement Class members, share an overriding interest in obtaining the largest possible monetary recovery and as fulsome cooperation as possible. *See, e.g.*, *In re Community Bank of N. Virginia Mortg. Lending Practices Litig.*, 795 F.3d 380, 394 (3d Cir. 2015) (no fundamental intra-class conflict to prevent class certification where all class members pursuing damages under the same statutes and the same theories of liability); *In re Corrugated Container Antitrust Lit.*, 643 F.2d 195, 222 (5th Cir. 1981),

5

cert. denied, 456 U.S. 998 (1982) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes"). Representative Plaintiffs are not afforded any special compensation by this proposed Settlement and all Settlement Class members similarly share a common interest in obtaining RelayHealth's early and substantial cooperation to prosecute this case.

Moreover, Plaintiffs and their counsel will continue to litigate this case vigorously and competently. As they demonstrated when they sought appointment, Interim Co-Lead Counsel are qualified, experienced, and thoroughly familiar with antitrust class action litigation.[2] As they respectfully submit has been demonstrated by their conduct to date, Interim Co-Lead Counsel have diligently represented the interests of the class in this litigation and will continue to do so. Accordingly, the Representative Plaintiffs and Interim Co-Lead Counsel have adequately represented the class.

### 2. The Settlement is Fair and Resulted from Arm's-Length Negotiations

Fed. R. Civ. P. 23(e)(2)(B) requires that "the proposal was negotiated at arm's length." There is usually an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's-length negotiations. *See* 2 NEWBERG ON CLASS ACTIONS, § 11.40 at 451 (2d ed. 1985); *Goldsmith v. Tech. Solutions Co.*, No. 92-C-4374, 1995 WL 17009594, at *3 n.2 (N.D. Ill. Oct. 10, 1995) ("[I]t may be presumed that the agreement is fair and adequate where, as here, a proposed settlement is the product of arm's-length negotiations."). Settlements proposed by experienced counsel and which result from arm's-length negotiations are entitled to deference

---

[2] *See* ECF No. 47 (Plaintiffs' Unopposed Motion for CMC Reassigning & Consolidating & Appointing Interim Lead Counsel); ECF No. 51 (Court's Order of December 3, 2019 appointing same).

from the Court. *See, e.g.*, *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (quoting *Hanrahan v. Britt*, 174 F.R.D. 356, 366 (E.D. Pa. 1997)). The initial presumption in favor of such settlements reflects courts' understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness concerns of Rule 23(e). In making the determination as to whether the proposed settlement is fair, reasonable, and adequate, the Court necessarily will evaluate the judgment of the attorneys for the parties regarding the "strength of plaintiffs' case compared to the terms of the proposed settlement." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010).

The proposed Settlement plainly meets the standards for preliminary approval. The Settlement reached here is the product of intensive arm's-length settlement negotiations, which included several rounds of give-and-take between Interim Co-Lead Counsel and RelayHealth's counsel. (Bruckner Decl. ¶ 6.) Based on Plaintiffs' extensive factual investigation to date, the cooperation provisions negotiated as part of the settlement enable Plaintiffs to obtain critical additional information regarding the allegations in the Complaint. (*Id.* ¶¶ 4-6.) The parties also extensively negotiated the role of potential class opt-outs and signed a separate and confidential agreement ("Confidential Supplemental Agreement") to address the consequences to the Settlement from potential opt-outs.[3] In the event that the number of opt-outs exceed the percentage specified in the Confidential Supplemental Agreement, RelayHealth shall have the right, but not the obligation, to withdraw from the settlement. Based on both the monetary and cooperation

---

[3] A copy of the Confidential Supplemental Agreement is attached as Exhibit C to the Bruckner Declaration for review and consideration *in camera*.

elements of the Settlement Agreement, Interim Co-Lead Counsel believe this is a fair settlement for the Settlement Class. (*Id.* ¶ 10.)

Moreover, this Settlement does not affect the potential for full recovery of damages for the Class under the antitrust laws in light of the fact that the remaining Defendants will be jointly and severally liable for all injuries incurred as a result of the conspiracy Plaintiffs allege; RelayHealth's sales remain in the case for purposes of assessing injury and damages to the Class. *See* Settlement Agreement, at 2; *see also Paper Sys. Inc. v. Nippon Paper Indus.*, 281 F.3d 629, 632 (7th Cir. 2002) ("[E]ach member of a conspiracy is liable for all damages caused by the conspiracy's entire output."). In addition to not affecting the overall damages, the Settlement should hasten and improve the Class' recovery by providing Plaintiffs access to information that likely would otherwise only be obtainable through protracted discovery. *See In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement where class will "relinquish no part of its potential recovery" due to joint and several liability and where settling defendant's "assistance in the case again [a non-settling defendant] will prove invaluable to plaintiffs").

In addition to a monetary payment, RelayHealth will provide material cooperation to the Class as provided in the Settlement Agreement. (*See* Bruckner Decl. ¶ 8.) Courts have recognized the value of such cooperation:

> [F]rom a pragmatic standpoint, the value of . . . [cooperating defendants] in litigation, as opposed to the specter of hundreds of uncooperative opponents, is significant. The [settling defendants] know far better than the plaintiff classes precisely what occurred in the [relevant] period . . . and their willingness to open their files . . . may ease the plaintiffs' discovery burden enormously.

*In re IPO Sec. Litig.*, 226 F.R.D. 186, 198-99 (S.D.N.Y. 2005) (footnote omitted). This cooperation here is even more valuable in light of the applicability of joint and several liability to

Plaintiffs' claims. While Plaintiffs believe that their case is strong, any complex antitrust litigation is inherently costly and risky, and this Settlement mitigates that risk and protects the Class.

Conversely, RelayHealth believes its defenses are strong and that if it continued to litigate, it would succeed on the merits. RelayHealth denies that it conspired with Surescripts to allocate the alleged routing market, and RelayHealth maintains that it did nothing wrong. (*See* Settlement Agreement, Recital E, p. 2) But in the interests of avoiding the risk and uncertainty of trial, RelayHealth has agreed to settle; Plaintiffs believe that its contracts and dealings with Surescripts gives it valuable and unique insight into Surescripts' monopoly over e-prescription routing services alleged by Plaintiffs.

In sum, the Settlement Agreement: (1) provides substantial benefits to the class; (2) is the result of extensive good faith negotiations between knowledgeable and skilled counsel; (3) was entered into after extensive factual investigation and legal analysis; and (4) in the opinion of experienced Class Counsel, is fair, reasonable, and adequate to the Class. Accordingly, Interim Co-Lead Counsel believe that the Settlement Agreement is in the best interests of the Class Members and should be preliminarily approved by the Court.

### 3. The Relief Provided For the Class Is Substantial and Tangible

In assessing whether the settlement provides adequate relief for the putative class under Rule 23(e)(2)(C), the Court should consider: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(i–iv).

"Settlement is favored if settlement results in substantial and tangible present recovery, without the attendant risk and delay of trial." *See, e.g.*, *In re Payment Card Interchange Fee and*

*Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 36 (E.D.N.Y. 2019) (citations omitted). Here, for the reasons described above in Section V(2), the settlement is fair and resulted from arm's-length negotiations. Counsel thoroughly evaluated the relative strengths and weaknesses of the respective litigation positions, and determined that the settlement brings substantial benefits to the proposed class at an early stage in the litigation, and avoids the delay and uncertainty of continuing protracted litigation with RelayHealth. (*See* Bruckner Decl. ¶¶ 5-10.) Plaintiffs have proposed an effective method of notice to the proposed Settlement Class used previously by experienced counsel (see Section VII below). In addition, during negotiations there was no discussion, let alone agreement, regarding the amount of attorneys' fees Plaintiffs' counsel ultimately may ask the Court to award in this case, and Plaintiffs' counsel are not seeking fees at this time. (Bruckner Decl. ¶ 7). The benefits of settlement outweigh the costs and risks associated with continued litigation with RelayHealth, and weigh in favor of granting final approval.

      **4.**      **The Proposal Treats Class Members Equitably Relative to Each Other**

Consideration under this Rule 23(e)(2) factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.

Here, representative Plaintiffs are treated the same as all other Class members in this proposed Settlement, and all Class members similarly share a common interest in obtaining RelayHealth's early and substantial cooperation to prosecute this case. The release applies uniformly to putative class members, and does not affect the apportionment of the relief to class members. Accordingly, this factor will likely weigh in favor of granting final approval. *See, e.g.*, *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 47 (E.D.N.Y. 2019).

10

## VI.    THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS

In order to preliminary approve the settlement proposals, the Court must also find that it will likely be able to certify the class for purposes of judgment on the proposal.  Fed. R. Civ. P. 23(e)(1)(B)(i–ii).

Under Rule 23, class actions may be certified for settlement purposes only.  *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Certification of a settlement class must satisfy each requirement set forth in Rule 23(a), as well as at least one of the separate provisions of Rule 23(b).  *Id.* at 613-14; *see also In re Cmty. Bank of N. Va.*, 418 F.3d 277, 299 (3d Cir. 2005) ("[C]ertification of classes for settlement purposes only [is] consistent with Fed. R. Civ. P. 23, provided that the district court engages in a Rule 23(a) and (b) inquiry[.]").

Plaintiffs seek certification of a Settlement Class consisting of:

> All pharmacies in the United States and its territories who paid for e-prescriptions routed through the Surescripts network during the period September 21, 2010 through the date of Preliminary Approval.  Excluded from the Settlement Class are Defendants and their officers, directors, management, employees, parents, owners, subsidiaries, or affiliates, and all governmental entities.

(Settlement Agreement, § II.E.2; Addendum to Settlement Agreement.)  As detailed below, this proposed Settlement Class meets the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3).

### A.    The Requirements of Rule 23(a) are Satisfied

#### 1.    Numerosity

Fed. R. Civ. P. 23(a)(1) requires that the class be so numerous as to make joinder of its members "impracticable."  No magic number satisfies the numerosity requirement, however, "a class of more than 40 members is generally believed to be sufficiently numerous for Rule 23 purposes."  *Schmidt v. Smith & Wollensky LLC*, 268 F.R.D. 323, 326 (N.D. Ill. 2010) (citations

omitted).  The proposed Settlement Class consists of pharmacies throughout the United States and its territories who paid for e-prescriptions routed through the Surescripts network during the period September 21, 2010 to the Date of Preliminary Approval.  Based on their investigation, Interim Co-Lead Counsel believe there are thousands of entities that fall within the Settlement Class definition.  Thus, joinder would be impracticable and Rule 23(a)(1) is satisfied.

## 2.  Common Questions of Law and Fact

Fed. R. Civ. P. 23(a)(2) requires that there be "questions of law or fact common to the class."  Plaintiffs must show that resolution of an issue of fact or law "is central to the validity of each" class member's claim and "[e]ven a single [common] question will" satisfy the commonality requirement.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011).

A central allegation in the Complaint is that Defendants illegally conspired to monopolize and conspired to eliminate competition in the routing market, thereby increasing prices to Plaintiffs and the Proposed Class.  Proof of this conspiracy will be common to all Class members.  *See, e.g.*, *Thillens, Inc. v. Cmty. Currency Exch. Ass'n*, 97 F.R.D. 668, 677 (N.D. Ill. 1983) ("The overriding common issue of law is to determine the existence of a conspiracy.").  In addition to that overarching question, this case is replete with other questions of law and fact common to the Settlement Class including: (1) Whether Surescripts willfully obtained and maintained market power over e-prescription routing; (2) Whether Surescripts unlawfully excluded competitors and potential competitors from the markets for routing and eligibility; (3) Whether Surescripts has any legally cognizable procompetitive benefit that could not have been achieved using a means with less restrictions on competition, and if so, whether the anticompetitive effect of Surescripts' misconduct nonetheless outweighs the procompetitive benefit; (4) Whether Surescripts entered into an illegal agreement with other Defendants not to compete and to allocate the routing market to Surescripts; (5) Whether the unlawful scheme alleged herein has substantially affected interstate

commerce; (6) Whether Defendants' anticompetitive conduct caused antitrust impact to Plaintiffs and members of the class; and (7) The quantum of aggregate overcharge damages to the class. Accordingly, the Settlement Class satisfies Rule 23(a)(2).

### 3. Typicality

Fed. R. Civ. P. 23(a)(3) requires that the class representatives' claims be "typical" of class members' claims. "[T]ypicality is closely related to commonality and should be liberally construed." *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 479 (N.D. Ill. 2009) (citations omitted). Typicality is a "low hurdle," requiring "neither complete coextensivity nor even substantial identity of claims." *Owner-Operator Indep. Drivers' Ass'n v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill. 2005). When "the representative party's claim arises from the same course of conduct that gives rise to the claims of other class members and all of the claims are based on the same legal theory," factual differences among class members do not defeat typicality. *Id.*

Plaintiffs here allege Defendants illegally conspired to monopolize and eliminate competition in the routing market thereby increasing prices to Plaintiffs and the Proposed Class. The named class representative Plaintiffs will have to prove the same elements that absent Settlement Class members would have to prove, *i.e.*, the existence and impact of such conspiracy. Because the representative Plaintiffs' claims arise out of the same alleged illegal anticompetitive conduct and are based on the same alleged theories and will require the same types of evidence to prove those theories, the typicality requirement of Rule 23(a)(3) is satisfied.

### 4. Adequacy

For the reasons mentioned above in Section V(1), the class representatives and class counsel have adequately represented the class.

13

**B.    The Proposed Settlement Class Satisfies Rule 23(b)(3)**

Once Rule 23(a)'s four prerequisites are met, Plaintiffs must show the proposed Settlement Class satisfies one of the provisions of Rule 23(b).  The proposed Settlement satisfies Rule 23(b)(3) by showing that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."    As to predominance, "[c]onsiderable overlap exists between the court's determination of commonality and a finding of predominance.  A finding of commonality will likely satisfy a finding of predominance because, like commonality, predominance is found where there exists a common nucleus of operative facts." *Saltzman*, 257 F.R.D. at 484.

In antitrust conspiracy cases such as this one, courts consistently find that common issues of the existence and scope of the conspiracy predominate over individual issues, which follows from the central nature of a conspiracy in such cases.  *Hughes v. Baird & Warner, Inc.*, No. 76 C 3929, 1980 WL 1894, at *3 (N.D. Ill. Aug. 20, 1980) ("Clearly, the existence of a conspiracy is the common issue in this case.  That issue predominates over issues affecting only individual sellers."); *see also Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws.").

Plaintiffs must also show that a class action is superior to individual actions, which is evaluated by four considerations:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

Fed. R. Civ. P. 23(b)(3).

Here, any Class member's interest in individually controlling the prosecution of separate claims is outweighed by the efficiency of the class mechanism. Thousands of entities paid for routing services during the class period; settling these claims in the context of a class action conserves both judicial and private resources and hastens Class members' recovery. Finally, while Plaintiffs see no management difficulties in this case, Plaintiffs do not believe that this final consideration is pertinent to approving the proposed settlement class. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

Accordingly, the proposed class action is superior to other available methods (if any) for the fair and efficient adjudication of the controversy relating to RelayHealth.

## VII. APPOINTMENT OF THE NOTICE ADMINISTRATOR AND APPROVAL OF THE PROPOSED NOTICE TO THE CLASS

Rule 23(e) requires that prior to final approval, notice of a proposed settlement be given in a reasonable manner to all class members who would be bound by such a settlement. For a class proposed under Rule 23(b)(3), whether litigated or by virtue of a settlement, Rule 23(c)(2)(B) states: The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). The form of notice is "adequate if it may be understood by the average class member." 4 Newberg on Class Actions § 11.53 (4th ed. 2002) ("Newberg"). Notice to class members must be "the best notice that is practicable under the circumstances, including

individual notice to all members who can be identified through reasonable effort." *Amchem Prods.*, 521 U.S. at 617 (quoting Fed. R. Civ. P. 23(c)(2)).

Plaintiffs propose that Angeion Group ("Angeion") be appointed by the Court to serve as the Settlement Administrator in this case. Angeion was selected by Co-Lead Counsel after a competitive bidding process. A comprehensive summary of judicial recognition Angeion has received is attached to the Declaration of Steven Weisbrot submitted in support of this motion, as Exhibit A, and Angeion's diversity and inclusion statement is attached to the Declaration as Exhibit B.

Plaintiffs further propose a plan of notice that comports with due process and provides reasonable notice to all known and reasonably identifiable customers of Defendants—settling and non-settling Defendants alike. The class notice documents—consisting of long form notice, email notice**,** publication notice, postcard notice, and a press release—comply with the requirements of Rule 23(c)(2)(B). (These proposed notices are attached to the Bruckner Declaration as Exhibit D (long form notice), Exhibit E (email notice), Exhibit F (publication notice), Exhibit G (postcard notice), and Exhibit H (press release).) The notice documents define the settlement class, describe the nature of the action, summarize the class claims, and explain the procedure for requesting exclusion from the settlement class and objecting to the proposed settlement. The notice documents describe the terms of the settlement with Defendant RelayHealth and inform the Settlement Class Members that there is no plan of distribution at this time to qualifying Class Members. The notice documents provide that there will be a final approval hearing, and informs class members that they need not enter an appearance through counsel, but may do so if they choose. The notice documents also inform Settlement Class members how to exercise their rights to participate in, opt out of, or object to the proposed settlement, how to make informed decisions

regarding the proposed settlement, and tell class members that the settlement will be binding upon them if they do not opt out.

Plaintiffs will rely predominantly on direct mail and email "to all members who can be identified through reasonable effort." *Amchem* Prods., 521 U.S. at 617 (quoting Fed. R. Civ. P. 23(c)(2)). Since the class members in this case are pharmacies, the names and addresses of class members can likely be readily obtained. In addition, pursuant to the Settlement Agreement, Plaintiffs will receive documents sufficient to show the identity of pharmacies in the United States and its territories that contracted with settling defendant RelayHealth for Surescripts e-prescription routing access during the class period. This information will be supplemented by the names and addresses of class members that can be readily obtained by Angeion, which, together with the documents provided by RelayHealth, will likely be sufficient to identify all Settlement Class Members. This will enable Plaintiffs to send notice to Settlement Class members.

Once Plaintiffs receive adequate customer contact data, Angeion will analyze the data and conduct address research to verify the Settlement Class Members' mailing addresses, updating as necessary. (Weisbrot Decl. ¶¶ 14-18.) Angeion will mail the notice via first-class U.S. mail to those Settlement Class Members. (*Id*. ¶ 14.) Angeion will employ best practices to increase the deliverability rate of the mailed Notices, including utilizing the National Change of Address database, re-mailing notices returned with forwarding addresses, and utilizing "skip tracing" to re-mail notices returned without forwarding addresses. (*Id*. ¶¶ 15-18.) Angeion will also send the email notice to all Settlement Class Members for whom email addresses are provided in the class list data. (*Id*. ¶ 19.) The email notice will provide Class Members with an electronic link to the settlement website, where they can obtain more information including the Settlement Agreement. (*Id*.)

17

Plaintiffs further plan to supplement the direct mail and email notice via digital publication notice, as well a custom social media campaign, print publication, and a press release. (*Id.* ¶¶ 23, 31, 35, 37.) Plaintiffs will also host an informational website with a memorable domain name, providing additional information and documents, and a toll-free number for frequently asked questions and requests for mailing of further information. (*Id.* ¶¶ 38-39.)

This proposed notice will provide full and proper notice to Class Members before the opt-out and objection deadlines, and is the best notice that is practicable under the circumstances. (*Id.* ¶ 41.) Interim Co-Lead Counsel submits that this proposed Notice goes above and beyond the requirements imposed by Fed. R. Civ. P. 23(c)(2) and 23(e), and thus should be approved.

## VIII. APPOINTMENT OF AN ESCROW AGENT TO MAINTAIN SETTLEMENT FUNDS

Finally, Plaintiffs propose that The Huntington National Bank ("Huntington") be appointed by the Court to serve as the escrow agent, maintain the Qualified Settlement Fund as called for by the parties' Settlement Agreement (*see* Settlement Agreement, § II.C), and provide escrow services in this litigation. Huntington was selected by Co-Lead Counsel after a competitive bidding process. Huntington's qualifications are attached to the Declaration of Robyn Griffin submitted in support of this motion, as Exhibit A, and Huntington's diversity and inclusion statement is attached to the Declaration as Exhibit B.

## IX. CONCLUSION

For these reasons, Interim Co-Lead Counsel respectfully request that the Court:

(1)     Preliminarily approve the Settlement Agreement;

(2)     Certify the proposed Settlement Class;

(3)     Appoint Interim Co-Lead Counsel as co-lead counsel for the Settlement Class;

(4)     Appoint Angeion as the notice and claims administrator;

(5)     Approve the program to notify members of the Settlement Class of this settlement; and

(6)     Appoint Huntington National Bank as the escrow agent to provide escrow services in this case.

Dated: July 29, 2020

<div style="margin-left:40%">

_s/Kenneth A. Wexler_____
Kenneth A. Wexler
Justin N. Boley
Tyler J. Story
**Wexler Wallace LLP**
55 West Monroe St., Ste. 3300
Chicago, IL 60603
T: (312) 346-2222
F: (312) 346-0022
kaw@wexlerwallace.com
jnb@wexlerwallace.com
tjs@wexlerwallace.com

W. Joseph Bruckner
Robert K. Shelquist
Brian D. Clark
**Lockridge Grindal Nauen P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
T: (612) 339-6900
F: (612) 339-0981
wjbruckner@locklaw.com
rkshelquist@locklaw.com
bdclark@locklaw.com

Tyler W. Hudson
Eric D. Barton
**Wagstaff & Cartmell, LLP**
4740 Grand Avenue, Ste. 300
Kansas City, MO 64112
T: (816) 701-1100
F: (816) 531-2372
thudson@wcllp.com
ebarton@wcllp.com

Daniel E. Gustafson

</div>

19

Karla M. Gluek
Michelle J. Looby
**Gustafson Gluek PLLC**
120 South Sixth Street, Ste. 2600
Minneapolis, MN 55402
T: (612) 333-8844
F: (612) 339-6622
dgustafson@gustafsongluek.com
kgluek@gustafsongluek.com
mlooby@gustafsongluek.com

Robert N. Kaplan, Esq.
Jeffrey P. Campisi, Esq.
Elana Katcher, Esq.
Matthew P. McCahill, Esq.
**Kaplan Fox & Kilsheimer LLP**
850 Third Ave., 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
rkaplan@kaplanfox.com
jcampisi@kaplanfox.com
ekatcher@kaplanfox.com
mmccahill@kaplanfox.com

Eugene A. Spector
William G. Caldes
Jeffrey L. Kodroff
John Macoretta
**Spector Roseman & Kodroff, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
espector@srkattorneys.com
bcaldes@srkattorneys.com
jkodroff@srkattorneys.com
jmacoretta@srkattorneys.com

*Interim Co-Lead Counsel*