**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE SURESCRIPTS ANTITRUST LITIGATION<br><br><br>This Document Relates To:<br><br>All Class Actions | Civil Action No. 1:19-cv-06627<br><br>District Judge John J. Tharp, Jr.<br><br>Magistrate Judge Susan E. Cox |

## DEFENDANT SURESCRIPTS, LLC'S MOTION TO COMPEL RESPONSES TO CERTAIN DISCOVERY REQUESTS

Pursuant to Federal Rule of Civil Procedure 37(a)(3)(B)(iv) and Local Rule 37.2, Defendant Surescripts, LLC ("Surescripts") respectfully moves the Court to compel Plaintiffs to produce (1) "downstream discovery" regarding Plaintiffs' pricing and the profitability of their pharmacy businesses, and (2) a privilege log reflecting Plaintiffs' counsel's communications with the Federal Trade Commission ("FTC") regarding their antitrust claims against Surescripts.

### INTRODUCTION

Surescripts brings this motion to compel Plaintiffs to produce two narrow categories of information that are relevant to the claims in this case and essential to Surescripts' ability to develop its defenses. Plaintiffs assert that Surescripts' discovery requests are improper and argue that production would impose an undue burden. Those objections are meritless and unsubstantiated.

First, Surescripts seeks data and documents regarding prescription revenues, costs, and profits from Plaintiffs' pharmacy businesses. Surescripts needs this "downstream discovery" of Plaintiffs' financial information to determine the extent to which Plaintiffs passed on any alleged overcharge to their customers and thus avoided any actual damages from Surescripts' supposedly anticompetitive conduct. The Plaintiff pharmacies are indirect purchasers of Surescripts' e-

1

prescribing services. Surescripts contracts directly with entities known as pharmacy technology vendors ("PTVs"), who in turn, contract with Plaintiffs and provide Plaintiffs with a range of technology services, including the interface necessary to connect to Surescripts' e-prescribing network. How much pharmacies charge their customers for prescriptions varies. After the Court initially dismissed Plaintiffs' federal antitrust claims under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), which prohibits indirect purchaser suits under federal law, Plaintiffs amended their complaint to allege antitrust claims under state laws which do not have the same prohibition. But, many of the state laws under which Plaintiffs bring their claims only allow plaintiffs to recover their actual damages (if any) and, accordingly, allow defendants to assert a "pass-on" defense. Because Plaintiffs are now pursuing state law claims under which Surescripts is entitled to raise a pass-on defense, "downstream discovery" relating to Plaintiffs' sales of prescriptions is relevant, necessary, and discoverable because it will allow Surescripts to test whether Plaintiffs were actually injured by Surescripts' alleged overcharge, which in turn depends in part on the extent to which they passed on the alleged overcharge to their customers. Plaintiffs have no basis to refuse production of this "downstream discovery."

Second, Surescripts seeks a privilege log of Plaintiffs' counsel's communications with the FTC. To date, Plaintiffs' attorneys have refused to confirm whether they communicated with the FTC regarding their claims against Surescripts, even though they have effectively conceded that those communications would be relevant to the claims and defenses in this case. Instead, Plaintiffs have asserted that their attorneys' communications with the FTC would be privileged under the "common-interest" doctrine. Yet Plaintiffs' counsel have refused to search for and produce responsive communications with the FTC or *even catalog them on a privilege log*. Surescripts does not see how Plaintiffs' communications with the FTC regarding their claims against

Surescripts would be protected by any privilege, but Surescripts is unable even to assess and test Plaintiffs' privilege claim without a log. Plaintiffs have stated that logging their communications with the FTC would be unduly burdensome. But Plaintiffs have offered nothing to substantiate the supposed burden and, regardless, Plaintiffs cannot unilaterally decide whether or not to log supposedly privileged communications—they are required to do so by the Federal Rules and the Protective Order in this case.

For the foregoing reasons, Surescripts respectfully requests that the Court compel Plaintiffs to produce the downstream financial information that Surescripts seeks and a privilege log that accounts for Plaintiffs' communications with the FTC regarding their claims against Surescripts.

## BACKGROUND

Surescripts is a health information technology company that provides e-prescription services, including "routing." ECF No. 238 (Second Amended Consolidated Class Action Complaint, or "SACC") ¶ 2.[1] Routing allows physicians to electronically transmit prescription and prescription-related information from the physician's electronic health record ("EHR") system to a pharmacy's database. *Id.* Plaintiffs are independent community pharmacies that contract with certain PTVs for, among a number of other services, the use of a database through which Plaintiffs can electronically receive prescriptions from physicians' offices through Surescripts' e-prescribing network. *Id.* ¶¶ 15–23.[2]

***Plaintiffs' Complaints and Surescripts' Motions to Dismiss.*** Plaintiffs originally asserted only federal antitrust claims against Surescripts and the other Defendants, alleging that they were

---

[1] This brief cites the redacted version of the SACC, filed on the docket on October 20, 2022. ECF No. 238. The SACC was initially filed under seal on October 19, 2020. ECF No. 147.

[2] Some Plaintiffs have an extra intermediary between them and Surescripts, called a value-added reseller ("VAR") that resells e-prescription routing transactions from Surescripts to PTVs, who in turn resell the routing transactions to Plaintiffs.

3

overcharged for Surescripts' routing services, which were resold to Plaintiffs by their respective PTVs. *See id.* ¶¶ 1, 4–12. On January 31, 2020, Surescripts moved to dismiss the federal antitrust claims on grounds that they were barred under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), because Plaintiffs were indirect purchasers of Surescripts' services. *See* ECF No. 79 at 10–15. On August 19, 2020, the Court granted Surescripts' motion to dismiss, holding that "plaintiffs have not plausibly alleged that they were direct purchasers [of Surescripts' routing services] or that they were first innocent purchasers from an identified member of [a] conspiracy sufficient to make them proper parties in this action." ECF No. 135 at 7.

To circumvent *Illinois Brick*'s fatal blow to their federal antitrust claims, Plaintiffs amended their complaint and alleged several state law antitrust claims in addition to their federal claims. *See* SACC ¶¶ 283–331. The amended complaint relies heavily upon the FTC's complaint in a related enforcement action, drawing upon the FTC's prior work product and referencing the FTC's investigation and civil case as support throughout. Surescripts again moved to dismiss. ECF Nos. 164–65. On June 21, 2022, the Court denied Surescripts' motion to dismiss the SACC, finding that because Plaintiffs' amended pleading invoked "state law theories of relief that are ostensibly indifferent to direct purchaser status," it made "resolution of the defendants' *Illinois Brick* argument superfluous" at the motion to dismiss stage. ECF No. 212 at 8.

***Surescripts' Discovery Requests and Plaintiffs' Responses.*** On September 20, 2022, Surescripts served its First Set of Requests for Production of Documents to Plaintiffs, which included the following requests for downstream discovery and communications with the FTC that are the subject of this Motion:

> **<u>Request No. 23</u>**: Documents sufficient to show Your annual total and average per prescription revenues, costs, and profits for Your pharmacy business. Include all breakdowns of revenues, costs, and profits at the most granular detail maintained

in the ordinary course of business, such as breakdowns by categories of drugs or merchandise and breakdowns by physical location.

**Request No. 25**: Documents relating to Your determination and/or negotiation of pharmacy dispensing fees or other revenues collected from consumers or payors (such as PBMs or government agencies) purchasing goods or services, including filled prescriptions, at Your pharmacy. Include all Documents relating to any changes, contemplated or actual, in Your fees due to changes in Your costs associated with Your e-prescription business.

**Request No. 32**: All Documents relating to the FTC Action, the FTC Investigation, and/or the CID, including without limitation all internal Documents and Communications relating to the FTC Action, the FTC Investigation, and/or the CID; all Communications with any trade association, industry group, pharmacy, or other entity that purchases routing services regarding the FTC Action, the FTC Investigation, and/or the CID; all of your Communications with the Federal Trade Commission and all Documents that you obtained from, produced to, or shared with (formally or informally) the Federal Trade Commission or any other federal, state, international, or foreign governmental entity relating to the FTC Action, the FTC Investigation, and/or the CID.

**Request No. 33**: To the extent not called for in Request No. 32, all Documents relating to Communications with or submissions to any government agency, including without limitation the Federal Trade Commission. This Request includes, without limitation, all such Documents regarding Surescripts, Emdeon, Allscripts, RelayHealth, any PTV or Network provider, or Routing services. This Request further includes without limitation all Documents relating to any Communications between You and any state or federal government agency, legislative body, official, or elected representative relating to the subject matter of the Complaint, including any documents received or obtained by You from any person or governmental entity relating to the subject matter of Your allegations in this Action, or relating to the investigation and potential filing of any complaint by You regarding routing transactions and/or prices.

Declaration of Eric A. Rivas. ("Rivas Decl."), Ex. 1 at 12–14.

On October 20, 2022, Plaintiffs served their Objections and Responses to Surescripts' First Set of Requests for Production of Documents to Plaintiffs ("Objections and Responses"). *See generally* Rivas Decl., Ex. 2. Plaintiffs raised several meritless objections, including that Request Nos. 23 and 25 (the Requests for downstream financial information) "improperly call[ed] for production of downstream information." *Id.* at 17–19. Plaintiffs initially agreed to produce

communications responsive to Request Nos. 32 and 33 (the Requests for Plaintiffs' communications with the FTC), but objected to each Request "to the extent [they] seek[ ] information protected from disclosure pursuant to the common-interest and work-product doctrines and/or attorney-client privilege." *Id*. at 23–24.

Surescripts and Plaintiffs met and conferred via Zoom on November 3, 2022 to discuss Plaintiffs' Objections and Responses. Rivas Decl. ¶ 4. Plaintiffs maintained their objections to Request Nos. 23 and 25 and invited Surescripts to provide authority regarding the propriety of downstream discovery in this case. *Id*. During that same meeting, Surescripts asked whether Plaintiffs intended to withhold communications with the FTC pursuant to their assertion of the common interest doctrine. *Id*. Plaintiffs refused to confirm whether there exist any communications between Plaintiffs and the FTC, but asserted if they do exist, it was "conceivable" that those communications would be privileged and identified on a privilege log. *Id*. But in subsequent meet and confer correspondence over several weeks (Rivas Decl., Exs. 3–7), Plaintiffs walked back their commitment to log their communications with the FTC and have, to date, refused not only to log any supposedly privileged communications but also refused to produce any non-privileged communications with the FTC. *See* Rivas Decl., Ex. 6 at 1–2. At the same time, Plaintiffs confirmed their refusal to produce any downstream financial information. *Id*. Surescripts thus seeks relief from the Court.

## LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). In ruling on motions to compel discovery under Rule 37(a), "courts have consistently adopted a liberal interpretation of the discovery rules." *Charvat v. Valente*, 82 F. Supp. 3d 713, 716 (N.D. Ill. 2015). "Courts commonly look unfavorably upon significant restrictions placed upon the

discovery process, and the burden rests upon the objecting party to show why a particular discovery request is improper." *Restoration Hardware, Inc. v. Haynes Furniture Co.*, No. 16 CV 10665, 2017 WL 3597517, at *1 (N.D. Ill. May 22, 2017) (citation omitted). Consistent with this liberal discovery standard, "discovery is not restricted to the narrow scope of a legal claim." *Belcastro v. United Airlines, Inc.*, No. 17C 1682, 2019 WL 1651709, at *3 (N.D. Ill. Apr. 17, 2019).

## ARGUMENT

For the reasons set forth below, the Court should compel Plaintiffs to produce the downstream financial information called for in Request Nos. 23 and 25 and a privilege log that accounts for Plaintiffs' communications with the FTC that are responsive to Request Nos. 32 and 33.

## I.    THE DOWNSTREAM FINANCIAL INFORMATION THAT SURESCRIPTS SEEKS IS RELEVANT AND SHOULD BE PRODUCED

Discovery of Plaintiffs' downstream financial data is necessary for Surescripts' defense because, under many of the state antitrust laws that Plaintiffs' bring their claims, they may only recover their actual damages from any purported overcharge; they cannot recover any alleged overcharges passed on to others. The downstream discovery that Surescripts seeks will allow Surescripts to test whether Plaintiffs suffered any damages and whether, and to what extent, they were able to pass any alleged overcharge onto their customers. Plaintiffs have no reason to refuse to produce the downstream financial information.

Plaintiffs have objected to producing any downstream financial information on the basis that such information is irrelevant in federal antitrust cases. *See* Rivas Decl., Ex. 2 at 17–19. They are mistaken. While downstream discovery is "usually not relevant in ***federal antitrust*** cases brought ***solely by direct purchaser*** plaintiffs," that rule does not apply in a case like this where Plaintiffs are ***indirect*** purchasers suing under ***state antitrust laws***. *In re Turkey Antitrust Litig.*

("*Turkey*"), No. 19 C 8318, 2021 WL 6428398, at *2 (N.D. Ill. Dec. 16, 2021) (emphasis added);

*see also In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2018 WL 3398141, at *2 (N.D. Ill.

July 12, 2018) ("[C]ourts have held that downstream discovery . . . may be relevant . . . in indirect

purchaser actions."); *In re Domestic Drywall Antitrust Litig.*, No. 13-2437, 2016 WL 3769680, at

*6 (E.D. Pa. July 13, 2016) (noting that the pass-on defense is a valid defense as to certain state

antitrust claims and "precludes indirect purchasers from recovering damages if the purchasers were

able to 'pass on' the overcharge to their customers").[3]

     If Plaintiffs were direct purchasers bringing only federal antitrust claims, they may have

had an argument that their downstream finances are irrelevant and protected from disclosure. But

they are not. In amending their complaint, Plaintiffs elected to pursue claims under state antitrust

laws in order to skirt the Supreme Court's prohibition on indirect purchaser actions under *Illinois

Brick*. *See, e.g.,* SACC ¶¶ 317–19. And, many of the state antitrust laws under which Plaintiffs

bring their claims limit damages to actual damages, *i.e.*, the net overcharge Plaintiffs absorbed and

were not able to pass on to their customers. *See Turkey*, 2021 WL 6428398, at *5. The Michigan

Antitrust Reform Act ("MARA") is one example. *See, e.g.*, SACC ¶ 318(j) (alleging Surescripts

violated Mich. Comp. Laws Ann. §§ 445.771, et seq.); *In re Vitamins Antitrust Litig.*, 259 F. Supp.

---

[3] In correspondence with Surescripts, Plaintiffs relied on *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 09 C 7666, 2012 WL 1533221 (N.D. Ill. Apr. 27, 2012) ("*Protein Therapies*"), *In re Folding Carton Antitrust Litig.*, No. MDL 250, 1978 U.S. Dist. LEXIS 20409 (N.D. Ill. May 5, 1978) ("*Folding Carton*"), and *In re Broiler Chicken Antitrust Litig.* ("*Broiler Chicken*") for the proposition that downstream discovery is categorically improper in antitrust litigation. *See* Rivas Decl., Ex. 2 at 18–19; Rivas Decl. Ex. 4 at 3. All three cases are inapposite. In *Protein Therapies*, the court denied the defendant's motion to compel production of downstream discovery based on the assumption that the indirect purchaser action would be transferred to a different court. *See* 2012 WL 1533221, at *3. And, *Folding Carton* and *Broiler Chicken* both involved indirect purchaser suits brought solely under federal law without any state law claims. *See Folding Carton*, 75 F.R.D. 727, 728, 738 (N.D. Ill. 1977); *Broiler Chicken*, No. 1:16-cv-08637, 2018 WL 999899, at *2 (N.D. Ill. Feb. 21, 2018); *Broiler Chicken*, No. 1:16-cv-08637, 2017 WL 1132032 (N.D. Ill. Jan. 27, 2017).

2d 1, 9 (D.D.C. 2003) (holding that, under MARA, "defendants can challenge [a] plaintiff's damage estimates with a pass through defense"). Plaintiffs have also sued under other state laws that permit a pass-on defense including New Mexico, Illinois, Minnesota, and New York, to name others. *See, e.g.*, SACC ¶ 318(f), (k), (r); N.M. Stat. Ann. § 57-1-3(C) ("In any action under this section, any defendant, as a partial or complete defense against a damage claim, may . . . prove that the plaintiff purchaser . . . who paid any overcharge . . . passed on all or any part of such overcharge . . . to another purchaser . . . ."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 09-cv-4997, 2012 WL 6709621, at *4 (N.D. Cal. Dec. 26, 2012) ("[I]n the absence of any authority precluding the pass-on defense under Illinois law, it is appropriate . . . to permit defendants to assert a pass-on defense."), *aff'd*, 637 F. App'x 981 (9th Cir. 2016); *id.* at *7 ("The Court concludes that allowing a pass-on defense is consistent with the Minnesota Antitrust Act because plaintiffs will recover their 'actual damages sustained.'" (quoting Minn. Stat. § 325D.57)); New York Gen. Bus. Law § 340(6) ("[A] defendant shall be entitled to prove as a partial or complete defense to a claim for damages that the illegal overcharge has been passed on to others…."). Having elected to sue under state antitrust laws to maintain their indirect purchaser claims, Plaintiffs must now produce discovery that is relevant and discoverable under those state laws. They cannot have it both ways.

In order to defend against Plaintiffs' state law claims for damages, Surescripts must have access to information that will allow it to assess the extent of pass-through; specifically, that includes data concerning the prices at which Plaintiffs sold prescriptions to their customers as well as the revenue they derive from their pharmacy businesses. The court's order granting defendants' motion to compel downstream discovery in *Turkey* is particularly instructive on this point. There, the defendants sought downstream discovery from indirect purchaser plaintiffs ("IPPs") because

at least some of the 23 state laws under which they brought their claims required that they prove that they were overcharged and did not pass along the alleged overcharge to their customers. 2021 WL 6428398, at *4. The IPPs resisted downstream discovery, like Plaintiffs do here, arguing that such discovery was irrelevant even under *Illinois Brick* repealer statutes, and because there was no risk of duplicative recovery because there were no other downstream plaintiffs. *Id.* The Court, however, sided with the defendants and compelled the IPPs to produce the requested downstream financial information. *Id.* at *5. The Court held that because some of the state statutes at issue limited the IPPs to "actual damages," there was a "need to determine how much overcharge any particular purchaser absorbed in order to prevent it from receiving a windfall if no other downstream purchasers file suit themselves." *Id.* The same is true here.

Plaintiffs have previously attempted to distinguish *Turkey* on the basis that it involved "plaintiffs [that] purchased and resold the relevant [products] unchanged" (Rivas Decl., Ex. 4 at 3), but that is incorrect. As *Turkey* makes clear, what matters is whether Plaintiffs were able to pass on any alleged overcharge to their customers. 2021 WL 6428398, at *5 (noting also that "individual IPPs treat turkey in different ways," some reselling turkey whole and some transforming it into sandwiches or other items). Nothing other than downstream financial information from Plaintiffs will enable Surescripts to test whether the Plaintiff pharmacies passed along any alleged overcharge to their customers.[4] Plaintiffs have asserted no reason other than

---

[4] The requested downstream discovery is also relevant to whether Plaintiffs suffered injury-in-fact, or instead passed on "the full amount of the overcharge to [their] customers." *In re Methionine Antitrust Litig.*, 204 F.R.D. 161, 164 (N.D. Cal. 2001). If discovery shows Plaintiffs entirely passed on what they call "overcharges," Plaintiffs' expert will be required to put forth a method for determining whether any putative class member who passed on purported overcharges nevertheless suffered injury-in-fact. *See id.* at 165–67 (denying motion for class certification where plaintiff's expert failed to proffer a colorable method for demonstrating injury-in fact on a class-wide basis that accounted for plaintiff that passed on overcharges).

relevance to support their refusal. Thus, they have no proper basis to stonewall Surescripts' discovery.

## II.     PLAINTIFFS HAVE NO BASIS TO REFUSE TO LOG THEIR SUPPOSEDLY PRIVILEGED COMMUNICATIONS WITH THE FTC

Communications between Plaintiffs' counsel and the FTC regarding either Plaintiffs' or the FTC's claims against Surescripts are relevant to Plaintiffs' credibility and bias, among other issues. Plaintiffs' amended complaint relies heavily upon the FTC's evidence in the related action, and so these communications will help Surescripts understand the basis for Plaintiffs' claims and would likely demonstrate that Plaintiffs' lawsuit is driven by Plaintiffs' counsel—not Plaintiffs— who are simply piggy-backing on the FTC's allegations against Surescripts in the hopes of obtaining a quick payout.

During the meet and confer process, Plaintiffs did not dispute the relevance of their communications with the FTC. Instead, Plaintiffs refused to confirm whether there exist any communications between Plaintiffs and the FTC, and asserted if there are such communications, it was "conceivable" those communications are protected under the common interest doctrine and would be identified on a privilege log. Rivas Decl. ¶ 4. Plaintiffs have since walked that position back and now refuse to log the communications with the FTC, arguing that logging any such communications would be unduly burdensome. Rivas Decl., Ex. 4 at 1, 4; *id.*, Ex. 6 at 1–2. Indeed, Plaintiffs refuse to even search for and collect any such communications—meaning they have not even confirmed whether any or all communications are privileged.[5] *See id.* Plaintiffs' claims of

---

[5] Plaintiffs have never detailed the supposed burden of reviewing and either producing or logging their communications with the FTC. Plaintiffs only argue that it would be inappropriate for their attorneys to serve as document custodians. But Surescripts does not seek to have Plaintiffs' counsel serve as "custodians" for all the requests for production whose files would be need to be forensically collected and searched. Instead, Plaintiffs' counsel could simply filter for email communications with the FTC, or collect communications from centralized files. But Plaintiffs

privilege are dubious at best. But, more importantly, Plaintiffs cannot unilaterally decide to shirk their privilege logging obligations under the Federal Rules. Plaintiffs must, at minimum, provide a privilege log of their communications with the FTC so that Surescripts can better evaluate their assertion of privilege.[6]

Surescripts cannot evaluate Plaintiff's assertion that the common interest doctrine applies without a log detailing the dates of Plaintiffs' counsel's communications with the FTC, a description of the subject of those communications, the participants in those conversations, and an explanation of the basis for Plaintiffs' claim of privilege. The common interest doctrine permits otherwise privileged information to be exchanged between parties and non-parties when they share a common legal interest. *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007). "The doctrine is not a privilege, but an exception to the general rule that the attorney-client privilege is waived when a communication is shared with a third party." *Whitney v. Tallgrass Beef Co. LLC*, No. 13 C 7322, 2015 WL 3819373, at *4 (N.D. Ill. June 18, 2015). Thus, the doctrine "only comes into play once a party has first established that a privilege applies." *Id.* For the common interest exception to apply, "the parties' interest in the subject matter involved in the communication must be identical, not merely similar." *Id.* (citing *BDO Seidman*, 492 F.3d at 816). Surescripts cannot evaluate Plaintiffs' blanket (yet also strangely equivocal) assertion of common-interest privilege without some understanding of who was involved with the communications at issue, the timing of when those communications took place, and the general subject matter. A privilege log would allow Surescripts to assess the purported time period and scope of the common

---

have never articulated the burden of producing or logging communications with the FTC, and so Surescripts has been unable to discuss any means of easing the burden.

[6] At this time, Surescripts is only moving to compel a privilege log and not the underlying communications. Surescripts reserves it right to move to compel the production of Plaintiffs' communications with the FTC after reviewing Plaintiffs' privilege log.

interest Plaintiffs believe they share with the FTC. Without a privilege log, Surescripts has no idea who was involved in any communications, including the possibility of additional third parties who would break any claim of common interest privilege.

Under Federal Rule of Civil Procedure 26(b)(5), as well as the Protective Order entered in this case, Plaintiffs are obligated to log responsive communications over which they assert a claim of privilege. *See* Fed. R. Civ. P. 26(b)(5); ECF No. 68 at 15–16. Fed. R. Civ. P. 26(b)(5)(A) requires that, when a party withholds documents on the basis of attorney-client privilege or attorney work product, that party must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Plaintiffs cannot unilaterally decide that they are absolved from these obligations. *See Whitney*, 2015 WL 3819373, at *4 ("A party cannot bypass its obligation under Rule 26 to produce a privilege log merely by claiming that the common interest exception applies."); *see also Coleman v. Illinois*, No. 19 C 3789, 2021 WL 4242465, at *7 (N.D. Ill. Apr. 30, 2021) (rejecting a party's refusal to produce a privilege log on grounds that doing so was not "necessary").

Moreover, Plaintiffs' claim of burden does not permit them to skirt their discovery obligations. Even taking Plaintiffs' burden argument as true, "[t]he fact that the compilation of such a log is burdensome will not obviate the need for the log . . . .'" *Wunderlich-Malec Sys., Inc. v. Eisenmann Corp.*, No. 05 C 04343, 2006 WL 3370700, at *8 (N.D. Ill. Nov. 17, 2006) (quoting *Abbott Lab'ys v. Alpha Therapeutic Corp.*, No. 97 C 1292, 2000 WL 1863543, at *3 (N.D. Ill. Dec. 14, 2000)); *see also Young v. City of Chicago*, No. 13 C 5651, 2017 WL 25170, at *6 (N.D. Ill. Jan. 3, 2017) (stating that Rule 26(b)(5) "give[s] a party . . . responding to discovery a choice: prepare an adequate privilege log or risk an order compelling disclosure of the allegedly privileged

material"). And regardless, Plaintiffs have not made any attempt to substantiate the supposed burden. For example, Plaintiffs' counsel have not indicated how many communications there are between themselves and the FTC, how many of those communications are purportedly shielded from production by the common interest privilege, or the cost of collecting, reviewing, and logging any such communications. Such boilerplate and unsubstantiated assertions of "burden" merit no weight. *See, e.g.*, *Smith v. City of Chicago*, No. 15 CV 3467, 2020 WL 13599000, at *3 (N.D. Ill. Nov. 4, 2020) (rejecting as "insufficient" the plaintiffs' "bare assertion that providing a more detailed log . . . would be burdensome").[7]

The Court should compel Plaintiffs to produce a privilege log that sufficiently describes their communications with the FTC and the basis for withholding any such communications, so that Surescripts can better evaluate their claim of privilege.

## CONCLUSION

For the foregoing reasons, Surescripts respectfully requests that the Court grant its motion to compel.


Dated: February 21, 2023

*/s/ Alfred C. Pfeiffer, Jr.*
Alfred C. Pfeiffer, Jr. (CA Bar 120965)
Elizabeth C. Gettinger (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Fax: (415) 395-8095
al.pfeiffer@lw.com

---

[7] *See also Welch v. Eli Lilly & Co.*, No. 1:06-cv-0641, 2009 WL 700199, at *14 (S.D. Ind. Mar. 16, 2009) (holding that a party failed to show that producing a detailed privilege log would be unduly burdensome because that party did not "provide any detail as to the number of documents at issue" or "the time it would take to prepare a more detailed log"); *Simmons Foods, Inc. v. Willis*, No. 97-4192, 2000 WL 204270, at *5 (D. Kan. Feb. 8, 2000) (rejecting plaintiffs' unspecified undue burden objection to logging "voluminous amounts of [privileged] documents").

elizabeth.gettinger@lw.com

Amanda P. Reeves (*pro hac vice*)
Allyson M. Maltas (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2183
Fax: (202) 637-2201
amanda.reeves@lw.com
allyson.maltas@lw.com

Nayanthika Ramakrishnan
(Bar No. 6336607)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Fax: (312) 993-9767
nayan.ramakrishnan@lw.com

*Attorneys for Defendant Surescripts, LLC*

## CERTIFICATE OF CONFERENCE

The undersigned counsel certifies that counsel has complied with the meet and confer requirement of Local Rule 37.2 and that the motion is opposed. On November 3, 2022 at approximately 2:00 p.m. Central Time, Surescripts, LLC's counsel, Eric A. Rivas, personally conferred with Plaintiffs' counsel, Daniel E. Gustafson and Michelle J. Looby, via Zoom regarding the matters presented and after good faith attempts to resolve their differences, no agreement could be reached. Since that time, both parties' counsel have continued to discuss these issues through written correspondence attached to the Declaration of Eric A. Rivas, submitted with this motion to compel. Despite continued good faith efforts, no agreement has been reached on the matters presented.

On February 17, 2022, Surescripts, LLC proposed a briefing schedule of February 21, 2023 for Surescripts, LLC's motion to compel, February 28, 2023 for Plaintiffs' opposition, and March 7, 2023 for Surescripts, LLC's reply. Despite counsel's good faith attempts to agree to a proposed briefing schedule with Plaintiffs' counsel regarding the instant motion, no agreement has been reached.

*/s/ Eric A. Rivas*
Eric A. Rivas