**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE SURESCRIPTS ANTITRUST LITIGATION**<br><br><br>**This Document Relates To:**<br>**All Class Actions** | **Civil Action No: 1:19-cv-06627**<br><br>**Judge John J. Tharp, Jr.**<br><br>**Magistrate Judge Susan E. Cox** |

**DEFENDANTS SURESCRIPTS, LLC AND ALLSCRIPTS HEALTHCARE SOLUTION, INC.'S JOINT MOTION TO EXCLUDE THE EXPERT TESTIMONY AND REPORT OF MICHELE V. DAVIDSON**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................1

II. SUMMARY OF OPINIONS ......................................................................................3

III. STANDARD OF REVIEW ........................................................................................6

IV. ARGUMENT ...............................................................................................................7

    A. The Court Should Exclude Ms. Davidson's Opinions Because
    They Are Unreliable. ............................................................................................7

        1. Ms. Davidson's Opinions Are Not Based on Any
        Discernable Methodology.........................................................................8

        2. Ms. Davidson Impermissibly Purports to Speak for the
        Plaintiffs.................................................................................................10

        3. Ms. Davidson Admits to Cherry-Picking the Materials She
        Relies on.................................................................................................11

    B. The Court Should Exclude Ms. Davidson's Opinions Because
    They Are Irrelevant............................................................................................12

        1. Ms. Davidson's Opinions on Pharmacy Multihoming Are
        Built on Flawed Assumptions that Do Not Fit the Facts of
        the Case..................................................................................................13

        2. Ms. Davidson's Opinion on Bundling E-Prescribing with
        Claims Adjudication Contradicts the Record. ..........................................16

        3. Ms. Davidson's Opinions on Federal Incentives and
        Uniform Script Standards Are Irrelevant Because They Do
        Not Relate to A Contested Issue. ............................................................18

V. CONCLUSION.........................................................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amari Co. v. Burgess*,
    2012 WL 5389787 (N.D. Ill. Nov. 2, 2012) ........................................................18

*Ancho v. Pentek Corp.*,
    157 F.3d 512 (7th Cir. 1998) ...............................................................................18

*Barber v. United Airlines, Inc.*,
    17 F. App'x 433 (7th Cir. 2001) ........................................................................7, 11

*Brown v. Burlington N. Santa Fe Ry. Co.*,
    765 F.3d 765 (7th Cir. 2014) ...........................................................................10, 12

*Clark v. Takata Corp.*,
    192 F.3d 750 (7th Cir. 1999) ...............................................................................10

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ..................................................................................... *passim*

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997) ...........................................................................6, 7, 15, 16

*George v. Kraft Foods Global, Inc.*,
    800 F. Supp. 2d 928 (N.D. Ill. 2011) ...................................................................11

*Gopalratnam v. Hewlett-Packard Co.*,
    877 F.3d 771 (7th Cir. 2017) ...............................................................................12

*Hartman v. EBSCO Indus., Inc.*,
    758 F.3d 810 (7th Cir. 2014) ...............................................................................18

*Krik v. Crane Co.*,
    71 F. Supp. 3d 784 (N.D. Ill. 2014) .....................................................................17

*Krik v. Exxon Mobil Corp.*,
    870 F.3d 669 (7th Cir. 2017) .................................................................................7

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) ..........................................................................................6, 7

*Lewis v. CITGO Petroleum Corp.*,
    561 F.3d 698 (7th Cir. 2009) .................................................................................6

*Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chi.*,
  877 F.2d 1333 (7th Cir. 1989) ........................................................................13

*Minasian v. Standard Chartered Bank, PLC*,
  109 F.3d 1212 (7th Cir. 1997) ..........................................................................9

*O'Conner v. Commonwealth Edison Co.*,
  13 F.3d 1090 (7th Cir.1994) ..............................................................................8

*Owens v. Auxilium Pharms., Inc.*,
  895 F.3d 971 (7th Cir. 2018) .......................................................................7, 16

*Padilla v. Hunter Douglas Window Coverings, Inc.*,
  14 F. Supp. 3d 1127 (N.D. Ill. 2014) ..........................................................9, 10

*Smith v. Ford Motor Co.*,
  215 F.3d 713 (7th Cir. 2000) ..............................................................................7

*U.S. Gypsum Co. v. Lafarge N. Am. Inc.*,
  670 F. Supp. 2d 748 (N.D. Ill. 2009) ...............................................................10

*United States v. Mamah*,
  332 F.3d 475 (7th Cir. 2003) ............................................................................18

*Ventriloscope v. MT Tool & Mfg.*,
  2019 WL 12528939 (N.D. Ill. Feb. 22, 2019) ............................................13, 14

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.*,
  395 F.3d 416 (7th Cir. 2005) ..............................................................................9

**Other Authorities**

Fed. R. Evid. 702 ..................................................................................... *passim*

Notes of Advisory Committee on 2000 Amendments ....................................................6

"SCRIPT Implementation Recommendations." *National Council for Prescription
  Drug Programs* (May 2023)
  https://www.ncpdp.org/NCPDP/media/pdf/SCRIPT-Implementation-
  Recommendations.pdf (accessed Nov. 14, 2023) ...................................................1

## I. INTRODUCTION

Plaintiffs' expert Michele V. Davidson ("Ms. Davidson") offers opinions that fail to meet the relevance and reliability requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). The Court should exclude them accordingly.

Ms. Davidson is an expert in standards setting. For approximately the last twenty years, Ms. Davidson has worked exclusively for pharmacies and a pharmacy trade organization in establishing and implementing standards for various electronic health transactions like claims adjudication (the review of health insurance claims) and, to a lesser extent, e-prescribing. Ms. Davidson has also testified before government agencies related to standards setting for electronic health information transactions. These standards create a common language for the electronic transmission of healthcare data. The standards do ***not*** dictate or create the physical hardware or software necessary for the transmission of electronic health data.[1] Companies like Surescripts, LLC ("Surescripts") have built the physical networks to actually transmit the data, between, for example, prescribers and pharmacies.

Despite her expertise being limited to standards setting, Ms. Davidson seeks to offer opinions on a number of other issues outside of her expertise or irrelevant to this case: (1) that the standards setting organization created standards that facilitated so-called "multihoming;" (2) that legislation and government incentives drove the adoption of e-prescribing; (3) that Surescripts did not have any unique technological capabilities that made it more attractive for e-prescribing than

---

[1] For example, in e-prescribing, the standards might specify attributes for given data fields (*e.g.* that the prescription include both the National Drug Code identifier and associated drug name as product identifiers, or that patient contact information include first name, last name, and address). The standards themselves do not mandate compliance, require companies to transmit, or deal with any of the quality or accuracy aspects of e-prescribing, such as misspellings or contradicting information. *See*, *e.g.*, "SCRIPT Implementation Recommendations." *National Council for Prescription Drug Programs* (May 2023) https://www.ncpdp.org/NCPDP/media/pdf/SCRIPT-Implementation-Recommendations.pdf (accessed Nov. 14, 2023).

1

competitor networks; and (4) that most if not all pharmacies would make decisions on what network to use based on price. Exhibit 1 ("Davidson Report" ¶ 9). Much of her unsubstantiated opinions are driven by her purported views on the technical and logistical feasibility of pharmacy "multihoming"— i.e., pharmacies' use of more than one e-prescribing network—and what "[m]ost, if not all, pharmacies" looked for when negotiating e-prescribing services. (Davidson Report ¶ 3.) Not surprisingly, Ms. Davidson's opinions in these areas are so untethered to her actual expertise that they violate Rule 702's basic requirements of relevance and reliability.

First, Ms. Davidson's opinions are unreliable because they do not rest on any objective, defensible methodology. Ms. Davidson admittedly fails to evaluate or put forth any data or analysis to support her claims, instead proffering conclusory statements for which her "experience" does not provide any foundation. This is not a scientific or supported methodology. Moreover, Ms. Davidson admits to cherry-picking her facts, disregarding the named Plaintiffs' testimony, and selectively ignoring key evidence. All of these errors render her opinions unreliable.

Second, Ms. Davidson's opinions are irrelevant because they are not "sufficiently tied to the facts" of this case and, thus, are not helpful to the finder of fact. *Daubert*, 509 U.S. at 591. Ms. Davidson opines that, absent Surescripts' conduct, "multihoming" and the bundling of claims adjudication with e-prescription services would have been both feasible and preferred by Plaintiffs. However, Ms. Davidson's opinions have no basis in the record and directly contradict the named Plaintiffs' testimony in this case and other record evidence. In addition, Ms. Davidson's opinions regarding federal e-prescribing incentives and standards are not relevant to any disputed issue in this case and thus are unhelpful to the trier of fact.

Ms. Davidson's opinions fail to meet the requirements of Rule 702 and the Court should thus exclude her opinions as inadmissible.

## II.     SUMMARY OF OPINIONS

Ms. Davidson lacks any specialized knowledge to assist the trier of fact in understanding the evidence at issue in this case. She is a pharmacist by trade and throughout her career has held several positions at pharmacies including Eckerd Drugs, Brooks Corporation, and Walgreen Company. (Davidson Report ¶ 4.) She has also worked for the National Association of Chain Drug Stores (NACDS). *Id*. Her expertise is in standards setting of electronic health information transactions regulated and set by the National Council of Prescription Drug Programs (NCPDP) (Davidson Report ¶ 3); Exhibit 2 "Davidson Dep. Tr.", 9:24-25 ("A. Throughout my career, I was considered an expert in what I do, with standards."). Ms. Davidson readily admits she has no expertise in what is required to build or operate an e-prescribing network. *Id*. at 77:19-78:4 ("Q. And you have no experience or knowledge regarding the infrastructure that needs to be developed for an e-prescribing network?… A. Correct. Q. And you don't have any experience or knowledge relating to the operations that need to be developed for an e-prescribing network? … A. Correct."). Ms. Davidson also has no expertise in economics. *Id*. at 28:8-29:14 ("Q. You were not retained for your economic expertise; correct? A. Correct. Q. And you weren't retained to provide any quantitative economic analysis of the markets? A. Correct."). Ms. Davidson has testified five or six times in front of government agencies—all of these times regarding standards setting—on behalf of NCPDP, NACDS, and Walgreens. *E.g.*, *id*. at 10:2-8, 15:3-13.

Despite her lack of expertise concerning actual issues in dispute in this case, Ms. Davidson then purports to set out four opinions.

Her first opinion is that uniform e-prescribing standards facilitated pharmacy "multihoming"—*i.e.*, pharmacies' use of more than one e-prescription network—and allowed "any healthcare technology company with the technological means" to route e-prescriptions. (Davidson Report ¶ 9.) In this first opinion, Ms. Davidson focused her assessment on whether

3

pharmacy "multihoming" was feasible in theory, not whether it was efficient or preferred by pharmacies or other industry participants. Davidson Dep. Tr., 149:5-9 ("Q. And so, here, are you, again, just stating your opinion that it would be possible for pharmacies to use multiple networks if there were a reason to do so? A. Yes."). She also admitted that multihoming is less efficient for pharmacies. *Id*. at 133:12-20 ("A single connection is always more efficient and reduces complexity.").

Ms. Davidson's second opinion is that "[l]egislation and government incentives drove the adoption of e-prescribing." (Davidson Report ¶ 9.) Defendants do not dispute that federal legislation and incentives played a role in the adoption of e-prescribing, and those facts are in the record. Ms. Davidson agrees that Surescripts also played a role in driving the adoption of e-prescribing. *See* Davidson Dep. Tr., 68:15-22 ("Q. And you agree that Surescripts played some role in the adoption of e-prescribing; right? A. Correct.").

Ms. Davidson's third opinion is that "[t]he standards/technology used to route e-prescriptions were not unique to Surescripts" and thus it was not more attractive to customers than other networks. (Davidson Report ¶ 9.) Defendants do not dispute that there were uniform *standards* for e-prescription routing. But Ms. Davidson admittedly did not analyze Surescripts' technology or operations (including both hardware and software), nor does she have any expertise related to technology or operations for a network. *See* Davidson Dep. Tr., 77:7-18 ("Q. But you didn't review any Surescripts source code or any internal operations, did you? A. Correct."); *id*. at 77:25-78:4 ("Q. And you don't have any experience or knowledge relating to the operations that need to be developed for an e-prescribing network?... A. Correct."); *id*. at 33:1-8 ("Q. And you don't have any expertise in developing hardware to connect a pharmacy benefit manager to a

4

prescriber? A. Correct."). Ms. Davidson also conceded that Surescripts was the first to offer many new innovations related to e-prescribing. *See, e.g., id.* at 108:5-13.

Ms. Davidson's last opinion is that "[b]undling of claims adjudication and e-prescribing services was technologically and logistically feasible and would have been attractive to pharmacies" because it would have lowered prices. (Davidson Report ¶ 9.) Ms. Davidson's speculation on pharmacies' subjective state of mind is impermissible in the first place and there is record evidence on this subject from pharmacy witnesses themselves. Moreover, Ms. Davidson did not even consider the testimony of the named pharmacy Plaintiffs in reaching this conclusion, despite purporting to speak on their behalf. *See* Davidson Dep. Tr., 36:17-21 ("Q. And you didn't rely on the deposition transcripts of any of the named plaintiff pharmacies in this case? A. I didn't feel that they were relevant to my report."); *id.* at 152:24-154:3 ("Q. And you didn't study the named plaintiffs, their reasons for choosing the PTVs that they chose? A. No, I did not. Q. And whether pricing was a factor? A. I did not. That was outside of the scope of what I looked at for this report."). Nor did she "conduct any studies or analyses to determine whether bundling was attractive to pharmacies." *Id.* at 88:11-17. Moreover, while bundling claims adjudication and e-prescribing may be feasible, Ms. Davidson did not analyze any pricing or cost data (or really anything) in opining that it would be attractive to pharmacies because it would lower prices. *Id.* at 28:14-29:14 ("Q. And you didn't analyze costs from an economic standpoint? A. Correct."); *see also id.* at 63:5-15 ("Q. And your report does not speak to what—as to what was economically feasible for any company involved in this case, does it? … Correct."). In fact, Ms. Davidson selectively ignored testimony and record evidence from Emdeon and RelayHealth that showed the opposite: there were no efficiencies in bundling claims adjudication and e-prescribing because the networks are completely separate. *Id.* at 36:22-37:6; *id.* at 89:8-18. ██████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████

In forming these four purported opinions, Ms. Davidson selectively picked the facts she wanted to rely on without any reasoned basis for doing so. She chose to review certain depositions because she knew the individuals from her time working in the industry. *See* Davidson Dep. Tr., at 34:25-35:11. Ms. Davidson also did not review key categories of evidence, including the depositions of the named Plaintiffs or other pharmacies or any contracts beyond one agreement between Surescripts and RelayHealth. *See* Davidson Dep. Tr., 36:17- 37:6.

## III.    STANDARD OF REVIEW

Expert testimony is admissible if the party offering such evidence shows that the testimony is both reliable and relevant. Fed. R. Evid. 702; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert*, 509 U.S. at 589 (1993). The proponent of expert testimony has the burden to establish admissibility under Rule 702 by a preponderance of the evidence. *See Daubert*, 509 U.S. at 592 & n.10; Notes of Advisory Committee on 2000 Amendments; *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). A district court performs a "'gatekeeper' role of screening such evidence to ensure that it is not only relevant, but reliable." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 136 (1997).

The district court in its gatekeeper role must ensure that an expert's testimony is reliable. The Supreme Court has set out a non-exhaustive list of factors for determining whether scientific testimony is sufficiently reliable to be admitted into evidence, including: (1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential error rate; and

(4) whether the theory or technique is generally accepted in the relevant scientific community. *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000). "[A] trial court may consider one or more" of these factors in determining the reliability of nonscientific expert testimony. *Kumho Tire Co.*, 526 U.S. at 141. In determining reliability, the court must also assess whether an expert opinion has "sufficient factual underpinnings," and exclusion is appropriate where an expert "cherry-pick[s] the facts he considered to render an expert opinion." *Barber v. United Airlines*, Inc., 17 F. App'x 433, 437 (7th Cir. 2001).

In addition to assessing reliability, *Daubert* requires a court to ensure that an expert's testimony is "relevant to the task at hand." *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 674 (7th Cir. 2017) (internal quotations omitted). To determine relevance, a trial judge "must make a preliminary assessment that the testimony's underlying reasoning or methodology" is "properly applied to the facts at issue." *Id*. This is known as the "fit" requirement, meaning that the expert testimony must not only be based on reliable science but must also "fit" the particular facts of the case. *Owens v. Auxilium Pharms., Inc.*, 895 F.3d 971, 973 (7th Cir. 2018). When an expert's opinion is "connected to existing data only by the *ipse dixit* of the expert," the opinion lacks "fit." *Joiner*, 522 U.S. at 146; *see also id.* at 152 (Breyer, J., concurring); *Kumho Tire Co.*, 526 U.S. at 157.

## IV. ARGUMENT

### A. The Court Should Exclude Ms. Davidson's Opinions Because They Are Unreliable.

Ms. Davidson's opinions should be excluded as unreliable. None of her opinions rest on a discernable, objective methodology. Moreover, Ms. Davidson renders her opinions unreliable by admitting to cherry-picking sources, speculating as to the Plaintiffs' subjective state of mind, and

ignoring key evidence, including all of the named Plaintiffs' testimony and the testimony of RelayHealth and Emdeon.

### 1. *Ms. Davidson's Opinions Are Not Based on Any Discernable Methodology.*

The Court should exclude each of Ms. Davidson's opinions on the grounds that none rests on a reliable methodology.

Ms. Davidson does not apply any discernable methodology in rendering her opinions on multihoming (Opinions 1 and 3). Instead, she bases her opinion solely on her expertise in standards setting, which is irrelevant to the task at hand. Indeed, Ms. Davidson does not cite a *single* authority in opining on the feasibility of multihoming, nor does she evaluate any data substantiating her claim. (Davidson Report ¶¶ 49-51.) There are two issues with this approach. First, Ms. Davidson admittedly has no expertise relevant to multihoming. She admits that she has *no* knowledge as to the infrastructure and software needed to form connections for multihoming. *See* Davidson Dep. Tr., 77:19-78:4. Nor does Ms. Davidson have any personal experience in a pharmacy's decision to multihome or singlehome. *Id*. at 148:18-20 ("Q. And you never handled the decision-making of whether to singlehome or multihome? A. Correct."). This is insufficient. *See O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1107 (7th Cir. 1994) (expert testimony properly excluded when based on a completely subjective methodology). Second, Ms. Davidson fails to evaluate or put forth any data substantiating her claim—she offers merely conclusory statements. *See*, *e.g.*, Davidson Report ¶ 49 ("[P]harmacies had the technical capability to use multiple networks for e-prescribing, and multihoming was feasible without any adverse impact on the quality of e-prescriptions because uniform standards existed."). Even assuming Ms. Davidson has relevant expertise, which she does not, her opinion must rest on more than expertise to be reliable. An expert's exclusion is warranted when the expert relies merely upon her "expertise" and

"awareness" instead of an evidence-based methodology because "conclusions that are not falsifiable aren't worth much to either science or the judiciary." *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005); *see also Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997) (excluding expert affidavit because it "does little beyond demonstrating how vital it is that judges not be deceived by the assertions of experts who offer credentials rather than analysis").

Similarly, Ms. Davidson fails to apply any objective methodology or calculations in opining that bundling claims adjudication and e-prescribing would lower prices in a but-for world (Opinion 4). Ms. Davidson admittedly did not perform any economic or pricing analysis to support this opinion, let alone any analysis of actual and but-for prices. *See* Davidson Dep. Tr., at 87:11-88:16. Nor did she "conduct any studies or analyses to determine whether bundling was attractive to pharmacies." *Id.* at 88:11-17. She simply assumes that bundling would have lowered prices and that pharmacies would have preferred bundling, which is contrary to the evidence as discussed below. *See infra* at 16-17. Not even Ms. Davidson's industry experience supports her bundling opinion. She admittedly has no experience or expertise in economics or pricing analysis. *Id.* at 63:2-64:3. Furthermore, she has never worked for a claims adjudication or e-prescribing vendor and thus has no basis in experience to conclude that bundling claims adjudication and e-prescribing would lower costs or prices. *Id.* at 93:8-12 ("Q. Did you have any view as to how multihoming affects the costs for other market participants like EHRs or PBMs?...A. No."); *id.* at 55:1-13 ("Q. Your professional experience with claims adjudication and e-prescribing was on the pharmacy side; is that right? A. Yes… Q. And it's correct you've never worked for an intermediary? A. Correct."). Ms. Davidson's opinions, therefore, should be excluded because they are "not grounded in [any] scientific method or susceptible to testing." *See Padilla v. Hunter Douglas Window*

*Coverings, Inc.*, 14 F. Supp. 3d 1127, 1137 (N.D. Ill. 2014) (finding "particularly troubling" expert opinions that "actually lend themselves to hands-on testing and empirical study such that conclusions based only on personal opinion and experience do not suffice") (internal quotations omitted); *see also Clark v. Takata Corp.*, 192 F.3d 750, 757 (7th Cir. 1999) ("an expert must 'substantiate his opinion; providing only an ultimate conclusion with no analysis is meaningless.'").

Ms. Davidson's opinion that federal incentives drove the adoption of e-prescribing (Opinion 2) likewise does not rest on any substantiated methodology. Ms. Davidson admitted she did not analyze the e-prescribing adoption rates of pharmacies, PBMs (pharmacy benefit managers), or EHRs before and after federal incentives. *See* Davidson Dep. Tr., at 113:7-17. In fact, she did not conduct any analysis of rates over time to verify her claims. *Id*. at 113:18-23 ("Q. And you don't do any analysis to determine e-prescribing rates over time? A. No. Q. And you don't do any analysis to determine connection rates over time? A. Correct."). This is fatal. Ms. Davidson cannot point to any data regarding what drove adoption because she did not analyze any data. Rather, she wants the finder of fact to rely solely on her say so, which is not helpful because it merely seeks to replace fact witness testimony and record evidence with her *ipse dixit* statements. In other words, Ms. Davidson applied no scientific methods, and the court should exclude her opinion. *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 772 (7th Cir. 2014); *see also U.S. Gypsum Co. v. Lafarge N. Am. Inc.*, 670 F. Supp. 2d 748, 753 (N.D. Ill. 2009) ("[T]he court must determine that the proffered expert opinions are more than mere speculation or conjecture, but have at their core some reliable basis.") (internal quotations omitted).

### 2. *Ms. Davidson Impermissibly Purports to Speak for the Plaintiffs.*

Ms. Davidson's opinion is also unreliable in that she impermissibly speaks to an entity's state of mind, becoming a mouthpiece for Plaintiffs and pharmacies generally. An expert's state

of mind opinion is speculative and unhelpful. *See George v. Kraft Foods Global, Inc.*, 800 F. Supp. 2d 928, 932–33 (N.D. Ill. 2011). Here, Ms. Davidson admits that she is opining on what pharmacies would do. *See* Davidson Dep. Tr. at 37:3-6. ("Q. But your opinions relate to what a pharmacy would do; right?...A. Yes."). There is ample testimony from the named Plaintiffs and other pharmacies in the record. Rather than rely on their own stated motivations and point of view, Ms. Davidson purports to speak for the Plaintiffs. (Davidson Report ¶ 61.) This renders her opinions on the attractiveness of multihoming and bundling to pharmacies unreliable.

### 3. *Ms. Davidson Admits to Cherry-Picking the Materials She Relies on.*

Ms. Davidson's opinions are also unreliable because she reviewed materials on an ad hoc basis and admitted to cherry-picking which documents to review without having any reasoned basis for what she chose. Exclusion is appropriate where an expert "cherry-pick[s] the facts he considered to render an expert opinion" because an expert opinion must have "sufficient factual underpinnings." *Barber v. United Airlines*, Inc., 17 F. App'x 433, 437 (7th Cir. 2001). Here, Ms. Davidson selected which documents to review based on whether she knew individuals, or at the suggestion of counsel. *See* Davidson Dep. Tr., at 34:25-35:16; *Id*. at 33:18-23. As a result of her cherry-picking, Ms. Davidson failed entirely to consider deposition testimony from the named Plaintiffs and other relevant pharmacies in this case. For example, she ignored testimony that pharmacies lacked a desire to multihome. *Id*. at 126:21-127:2; *id*. at 127:3-10; *id*. at 133:1-20. And she selectively ignored evidence that multihoming and bundling do ***not*** result in efficiencies. *Id*. at 36:22-37:6; *id*. at 89:8-18. Ms. Davidson likewise neglected to rely on *any* of the named Plaintiffs' testimony in this case ***because she viewed it as irrelevant***. *See* Davidson Dep. Tr., 36:17-37:6 ("Q. And you didn't rely on the deposition transcripts of any of the named plaintiff pharmacies in this case? A. I didn't feel that they were relevant to my report.).

Ms. Davidson also ignored testimony and documents from RelayHealth and Emdeon on their actual capabilities for e-prescribing and bundling—basing her opinions primarily on a handful of documents from Surescripts (which indisputably has never offered claims adjudication services)—despite opining on what RelayHealth and Emdeon could and would do in a hypothetical alternative world. *See*, *e.g.*, Davidson Dep. Tr., 116:9-18 ("Q. And you – in this paragraph 37, you didn't rely on any RelayHealth documents? A. No. Q. Did you? A. No. Q. You rely on Surescripts documents for your opinions? A. Yes, and my – as well as my . . . industry expertise."); *id*. at 157:24-158:5. Throughout her report, Ms. Davidson concludes that Emdeon or RelayHealth would have successfully lowered prices in e-prescribing routing through bundling but ignores those companies' testimony that bundling offered them no competitive advantage. (Davidson Report ¶ 62; Davidson Dep. Tr., at 36:22-37:6; *id*. at 89:8-18.) The best sources of what RelayHealth or Emdeon could or would do are RelayHealth or Emdeon themselves. Ms. Davidson ignores that evidence, rendering her opinions unreliable.

By cherry-picking the evidence she relies on and substituting her own views for that of the Plaintiffs, Ms. Davidson renders her opinions unreliable. Consequently, Ms. Davidson's testimony is unreliable cherry-picking and should be excluded. *See Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 787 (7th Cir. 2017) (affirming exclusion of expert where he "failed to account for other possible explanations in arriving at his conclusion"); *see also Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 774 (7th Cir. 2014) (affirming exclusion of expert where he failed to investigate or rule out alternative causes).

**B.      The Court Should Exclude Ms. Davidson's Opinions Because They Are Irrelevant.**

All of Ms. Davidson's opinions are irrelevant and should be excluded on that basis. ***First***, Ms. Davidson's opinion that multihoming is both feasible and desirable for pharmacies rests on

flawed assumptions and does not fit the facts of the case. **Second**, Ms. Davidson's opinion that bundling of claims adjudication and e-prescribing routing would have offered a lower price and would be preferred by pharmacies is contrary to the record—and thus lacks the necessary "fit"— because both the named Plaintiffs and the parties capable of bundling those services testified otherwise. **Third**, Ms. Davidson's opinions as to federal incentives and universal script standards should be excluded because they do not relate to any determinative issue in this case, and thus would only serve to confuse a finder of fact.

### 1. *Ms. Davidson's Opinions on Pharmacy Multihoming Are Built on Flawed Assumptions that Do Not Fit the Facts of the Case.*

Ms. Davidson's opinions on the desirability of multihoming should be excluded because they are based on flawed assumptions and disregard contrary facts. Here, Ms. Davidson concludes that pharmacies desired multihoming, that pharmacies were primarily motivated by price in evaluating services, and that multihoming would have decreased costs. All of these conclusions ignore the record evidence to the contrary. An expert's opinion is not relevant to the case at hand when she ignores contrary evidence. *See Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chi.*, 877 F.2d 1333, 1339-40 (7th Cir. 1989) (finding that an expert "opinion has a significance proportioned to the sources that sustain it" and an expert who "cast aside his scholar's mantle and became a shill for [Plaintiff]" was rightfully excluded). Ms. Davidson's opinions should therefore be excluded as irrelevant for lack of fit.

Ms. Davidson's inference that, because multihoming for e-prescribing was possible, that it was necessarily logical[2] for pharmacies (Davidson Report ¶ 9); Davidson Dep. Tr., 78:6-16, is impermissible *ipse dixit* that lacks any connection to the record. *E.g.*, *Ventriloscope v. MT Tool & Mfg.*, 2019 WL 12528939, at *6 (N.D. Ill. Feb. 22, 2019) (*ipse dixit* is "testimony that a witness

---

[2] There is no dispute that multihoming is technically feasible.

claims is correct because he or she says it is correct"). Ms. Davidson's assumption that "pharmacies would have been interested in using multiple networks if those networks had been available" (Davidson Report ¶58) disregards market realities, as well as pharmacy testimony that they did not desire multihoming. Initially, Ms. Davidson's assumption is based on a faulty premise that pharmacies decided whether to use multiple connections. In reality, only a few large pharmacies connected to Surescripts directly and had the decision making capability on whether to multihome. Generally, the relevant decisionmakers of whether to set up multiple routing network connections were resellers, pharmacy technology vendors ("PTVs"), and EHRs. Plaintiffs' Second Amended Consolidated Class Action Complaint ("SAC") ¶¶ 53, 57, 167 [Dkt. 147]. Ms. Davidson also ignored consistent testimony from EHRs and PBMs that they chose not to multihome even when multihoming was an available option. *See*, *e.g.*, *id*. at 127:11-18 ("Q. You understand that Mr. DuAime testified that NextGen has never used two different providers for routing? A. Yes."). For the large pharmacies that had the option of multihoming, Ms. Davidson admits that they testified that multihoming was impractical and logistically challenging. *See* Davidson Dep. Tr., 126:21-127:2 ███████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████ In sum, Ms. Davidson had access to the testimony of multiple witnesses that they did *not* desire multihoming for e-prescribing but she ignored these adverse facts and instead based her opinion on an untethered assumption contrary to the evidence. Ms. Davidson's multihoming

opinion is, therefore, impermissible *ipse dixit* and must be excluded because she wants the court to take her say so over the actual witnesses in this case. *See Joiner*, 522 U.S. at 146 ("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

Ms. Davidson's claim that pharmacies would have been interested in multihoming because "pharmacies were particularly interested in getting the best pricing possible" (Davidson Report ¶¶ 55, 58) ignores the testimony of the named Plaintiffs that they either chose ***not*** to multihome or ***did not evaluate pricing*** for e-prescribing services when choosing a PTV (all of the named Plaintiffs contracted for e-prescribing services through a PTV). For example, Ms. Davidson ignores the testimony from Whitman Pharmacy that its PTV did give the option of whether to route through Surescripts, Emdeon, or both, and Whitman chose Surescripts. *See* Exhibit 3 "Whitman Dep. Tr.", 159:8-22. Further, Ms. Davidson's logical leap that pharmacies would prefer multihoming neglects testimony from Plaintiff pharmacies in this case that they did not evaluate pricing for e-prescription or PTV (pharmacy technology vendor) services. *See*, *e.g.*, Exhibit 4 "Corner Dep. Tr.", 110:10-14 ("Q. Did you compare prices? A. Not really."); Exhibit 5 "Summers Dep. Tr.", 51:18-24 ("Q. Did you analyze the pricing for electronic prescription routing at that time? A. I did not. Q. And you didn't shop around for prices for electronic prescription routing? A. No."); Whitman Dep. Tr., 176:19-177:5. The named Plaintiffs testified largely that they chose PTVs based on the services provided and word of mouth recommendations, not the individual price of e-prescribing routing. *See*, *e.g.*, Corner Dep. Tr., 104:19-105:1; Exhibit 6 "Concord Dep. Tr.", 65:13-21 ("Q. Did you reach out to any other PTV companies when you were deciding which company to use? A. No. Q. So you heard from -- through word of mouth about Pioneer, and that's why you contacted them? A. Yes. Yes. I did talk to other pharmacies that had Pioneer, but I don't

recall which ones at the time."). Because Ms. Davidson's conclusion that e-prescribing pricing was the primary motivating factor for pharmacies contradicts the Plaintiffs' own testimony in this case, it does not fit the facts of the case and is irrelevant. *Owens v. Auxilium Pharms., Inc.*, 895 F.3d 971, 973 (7th Cir. 2018) (expert opinion that wrongly assumed facts that were contrary to the evidence was properly excluded).

Finally, Ms. Davidson's assumption that multihoming would lower prices for pharmacies disregards inconvenient (to her) facts about the associated costs related to multihoming. Ms. Davidson herself admits that multihoming costs more to set up and requires greater infrastructure costs than singlehoming. *See* Davidson Dep. Tr., 99:17-99:19 ("Q. So some additional development is needed to facilitate or implement multihoming? A. Correct."); *id.* at 93:2-12 ("Q. Do you have any view as to how multihoming affects pharmacy costs? A. Yes. It costs more to set up initially."). Ms. Davidson's opinion that pharmacies would prefer multihoming for pricing reasons directly contradicts the facts she recognizes—in particular, that multihoming was actually more expensive. Ms. Davidson's opinions on multihoming thus, do not comport with the record and defy logic.

Because Ms. Davidson's opinions rest on *ipse dixit* and willful disregard of contradictory facts, they lack "fit" and should be excluded from trial. *Joiner*, 522 U.S. at 146.

### 2. *Ms. Davidson's Opinion on Bundling E-Prescribing with Claims Adjudication Contradicts the Record.*

Ms. Davidson's speculation that pharmacies wanted the lowest price for e-prescribing services and, thus, would have preferred a "bundle" of claims adjudication and e-prescribing services contradicts the record evidence. Ms. Davidson disregards the Plaintiffs' own testimony on their motivating factors in contracting with PTVs, as well as the testimony of Emdeon, a company that had e-prescribing and claims adjudication networks and could and did actually

16

bundle them. Her opinions are thus irrelevant.

First, as discussed above, Ms. Davidson did not even consider the testimony of the pharmacies she purports to represent. *See supra* at 12. And Ms. Davidson's view that pharmacies sought the lowest price for e-prescribing services is directly at odds with the Plaintiffs' own testimony in this case that they did not evaluate pricing for e-prescription services in selecting their PTV. *See*, *e.g.*, Summers Dep. Tr., 51:1-24; *supra* at 16. Ms. Davidson's speculation on what Plaintiffs would have wanted is an inappropriate subject for expert testimony for the reasons discussed above, and particularly when there is unambiguous record evidence as to what motivated Plaintiffs. *See Krik v. Crane Co.*, 71 F. Supp. 3d 784, 788 (N.D. Ill. 2014) (expert witness not permitted to testify as to what any particular party "knew or should have known"). Moreover Ms. Davidson's conjecture is harmful and risks confusing this issue because her view directly contradicts the evidence. Accordingly, Ms. Davidson's opinions are not helpful to a trier of fact and should be excluded as irrelevant. *Id*. at 791-92 (excluding expert testimony where the conditions of the expert's simulation did not fit the facts of the case).

Second, Ms. Davidson's assumption on the lower prices all pharmacies would receive from bundling contravenes the testimony of parties who actually provide claims adjudication services. As Ms. Davidson herself admitted, ███████████████████████████████ ████████████████████████████████. *See* Davidson Dep. Tr., 89:4-18. Ms. Davidson simply assumes then, without analysis, that companies like Emdeon or RelayHealth would lower prices to all pharmacies. She also assumes without evidence or analysis that most pharmacies would benefit from savings through bundling services even though pharmacies generally did not contract with or connect to e-prescribing networks like Surescripts or Emdeon directly and instead contracted for services with PTVs or resellers. *See* SAC ¶¶ 53, 57 [Dkt. 147].

Ms. Davidson's opinion that bundling was advantageous does not fit the facts of the case, and she cites to no evidence in support of her position.

Ms. Davidson cannot simply ignore Plaintiffs' testimony, ignore the testimony of the parties who she purports would have bundled e-prescribing with claims adjudication, and then offer an opinion that directly contradicts that record evidence. *See United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003) ("It is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony"). All of Ms. Davidson's opinions on bundling are therefore irrelevant and should be excluded.

> ### 3. *Ms. Davidson's Opinions on Federal Incentives and Uniform Script Standards Are Irrelevant Because They Do Not Relate to A Contested Issue.*

Ms. Davidson's opinions on federal incentives for e-prescribing and universal e-prescribing standards are unhelpful because they do not relate to any contested issue in this case. Defendants do not dispute that federal legislation and incentives helped drive the use of e-prescribing, nor do they dispute that NCPDP adopted universal e-prescribing standards. Those facts are clear from the record, and Ms. Davidson's purported opinions add nothing to assist the trier of fact. *See Amari Co. v. Burgess*, 2012 WL 5389787, at *6 (N.D. Ill. Nov. 2, 2012) ("[A]n expert must testify to something more than what is obvious to the layperson in order to be of assistance to the jury"); *see also Ancho v. Pentek Corp.*, 157 F.3d 512, 519 (7th Cir. 1998). Because Ms. Davidson's purported opinions on federal incentives and universal e-prescribing standards merely restate facts that are clear from the record, they should be excluded. *See Hartman v. EBSCO Indus., Inc.*, 758 F.3d 810, 819 (7th Cir. 2014) ("[e]xpert testimony is inadmissible if it is not helpful to the trier of fact, because it would not have aid[ed] the jury in resolving a factual dispute.") (internal quotations omitted).

18

## V.    CONCLUSION

For the reasons above, Ms. Davidson's opinions in this case do not comport with the requirements of FRE 702 or *Daubert* and are thus inadmissible and should be excluded.

Dated: November 17, 2023                          Respectfully submitted,

/s/Katharine M. O'Connor
Joel R. Grosberg (*pro hac vice*)
**McDermott Will & Emery LLP**
The McDermott Building
500 North Capitol St NW
Washington, DC, 20001-1531
Telephone: (202) 756-8207
Email: jgrosberg@mwe.com

Katharine M. O'Connor
**McDermott Will & Emery LLP**
444 West Lake Street, Suite 4000
Chicago, IL, 60606-0029
Telephone: (312) 984-3627
Email: koconnor@mwe.com

*Attorneys for Defendant Allscripts*
*Healthcare Solutions, Inc.*

/s/Alfred C. Pfeiffer, Jr. (*with consent*)
Alfred C. Pfeiffer, Jr. (CA Bar 120965)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Fax: (415) 395-8095
al.pfeiffer@lw.com

Amanda P. Reeves (*pro hac vice*)
Allyson M. Maltas (*pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2183
Fax: (202) 637-2201
amanda.reeves@lw.com
allyson.maltas@lw.com

Elyse M. Greenwald (*pro hac vice*)
**LATHAM & WATKINS LLP**
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067-6268
Telephone: (424) 653-5500
Fax: (424) 653-5501
elyse.greenwald@lw.com

*Attorneys for Defendant Surescripts, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2023, I served **DEFENDANTS SURESCRIPTS, LLC AND ALLSCRIPTS HEALTHCARE SOLUTIONS, INC.'S JOINT MOTION TO EXCLUDE THE EXPERT TESTIMONY AND REPORT OF MICHELE V. DAVIDSON** on all counsel of record via the CM/ECF electronic filing system.

/s/ Katharine M. O'Connor
Katharine M. O'Connor
McDermott Will & Emery LLP