**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE SURESCRIPTS ANTITRUST LITIGATION | ) ) ) ) ) ) ) | No. 19 C 6627<br><br>Judge John J. Tharp, Jr. |

**MEMORANDUM OPINION AND ORDER**

The plaintiffs in this case are nine pharmacies ("the Pharmacies") seeking to represent a class of U.S. pharmacies who paid for e-prescriptions routed through Surescripts' electronic network.[1] 2nd Amd. Consol. Class Action Compl. ("SAC") ¶¶ 15-23, 274, ECF No. 147. The defendants are Surescripts, LLC ("Surescripts") and Allscripts Healthcare Solutions, Inc. ("Allscripts"), two health information technology companies.[2] In this action, the Pharmacies allege that Surescripts violated section 2 of the Sherman Act, 15 U.S.C. § 2, and the antitrust laws of twenty-eight states by maintaining a monopoly in two national markets, e-prescription routing and eligibility, through anticompetitive conduct. SAC ¶¶ 212, 317-19, 323-25. The Pharmacies also allege that Surescripts and Allscripts engaged in a contract, combination, or conspiracy in restraint of trade in violation of section 1 of the Sherman Act, 15 U.S.C. § 1, and the antitrust laws of twenty-six states.[3] Id. at ¶¶ 308-316, 320-28. The Pharmacies claim that because of the defendants'

---

[1] There are 10 pharmacies identified as plaintiffs in the second amended complaint; one—Jordan Drug, Inc. d/b/a Powell Prescription Center—filed a stipulated dismissal. ECF No. 244.

[2] RelayHealth, Inc. was named as a defendant in the original complaint and in the SAC but has settled the claims against it and is no longer a party. *See* Order, Feb. 24, 2022, ECF No. 202.

[3] Across all state-law theories, Counts V-VIII, the Pharmacies allege that the defendants violated the antitrust laws of thirty distinct states.

anticompetitive conduct, the Pharmacies paid artificially inflated prices for e-prescription routing services. *Id.* at ¶¶ 4-12, 236. They seek damages in the form of these overcharges and injunctive relief. *Id.* at ¶¶ 273, 332.

Surescripts seeks to compel responses to certain discovery requests. Def. Surescripts' Mot. Compel. Resps. Certain Disc. Reqs. ("Def.'s Mot. Compel"), ECF No. 247. Two categories of discovery requests are disputed. First, Surescripts seeks documents regarding the Pharmacies' prescription revenues, costs, and profits ("downstream discovery"). *Id.* at 7-11. Surescripts asserts that this discovery will allow it to determine whether the Pharmacies passed on any of the alleged overcharges to their customers. Although acknowledging for the purposes of this motion that a pass-on defense is not available as to its federal claims, Surescripts asserts that "many" of the state laws under which the Pharmacies bring claims limit damages to actual harm, so that the Pharmacies may not recover the amount of any overcharges they passed on to their customers. *Id.* at 7; *see also* Def. Surescripts' Reply Br. Supp. Mot. Compel ("Def.'s Reply Br.") 2-7, ECF No. 262. The Pharmacies dispute the relevance of this proposed discovery, arguing that the state laws at issue do not permit a pass-on defense under the circumstances of this case and/or that a pass-on defense is unavailable because the Pharmacies are end purchasers of routing services. Pls.' Mem. Opp. Def.'s Mot. Compel ("Pls.' Resp. Br.") 2-9, ECF No. 251; Pls.' Sur-Reply Opp. Mot. Compel ("Pls.' Sur-Reply Br.") 1-3, ECF No. 269. In the alternative, if the Court deems the discovery to be relevant, the Pharmacies contend that Surescripts' request is overbroad. Pls.' Resp. Br. 10-11.

Second, Surescripts seeks a privilege log reflecting Plaintiffs' counsel's communications with the FTC regarding the Pharmacies' antitrust claims against Surescripts, to evaluate the Pharmacies' claim of common-interest privilege over these communications. Def.'s Mot. Compel 11-14. Surescripts contends that the underlying communications "are relevant to Plaintiffs'

credibility and bias." *Id.* at 11; *see also* Def.'s Reply Br. 2, 10. The Pharmacies dispute that the proposed discovery is relevant to any party's claims or defenses in this case. Pls.' Resp. Br. 11-14; Pls.' Sur-Reply Br. 6-7. In addition, they argue that Surescripts' motion is procedurally improper because Surescripts has failed to satisfy its meet and confer obligations under Local Rule 37.2 (N.D. Ill.). Pls.' Resp. Br. 14-15.

The Court grants in part and denies in part Surescripts' motion to compel. The Court finds that downstream discovery may be relevant to a pass-on defense as to the Pharmacies' Michigan-law claims, and that downstream discovery regarding the Pharmacies' prescription medication sales in Michigan is proportional to the needs of the case. However, the Court finds that other downstream discovery falls outside the scope permitted by Federal Rule of Civil Procedure 26(b)(1) because federal and California antitrust laws do not permit a pass-on defense in this case, and Surescripts has not shown that any of the other antitrust laws at issue permit a pass-on defense. In addition, the Court denies the motion to the extent that Surescripts seeks a privilege log reflecting communications between Plaintiffs' counsel and the FTC regarding antitrust claims against Surescripts. Those communications are not relevant to any party's claims or defenses.

## BACKGROUND

The Pharmacies brought suit in this Court seeking damages and injunctive relief for monopolization and a contract, combination, or conspiracy in restraint of trade by the defendants in two complementary product markets: e-prescription routing, or "the transmission of prescription and prescription-related information between the prescriber's [electronic health record ("EHR")] and a pharmacy"; and eligibility, or "the transmission of a patient's formulary and benefit information from a [pharmacy benefit manager ("PBM")] to a prescriber's EHR prior to the patient's appointment." SAC ¶¶ 32-33, 212. The Pharmacies' complaint followed a similar

3

complaint filed in 2019 by the FTC in the United States District Court for the District of Columbia. The FTC action has since settled. *Fed. Trade Comm'n v. Surescripts, LLC*, No. 19-1080 (D.D.C. dismissed Aug. 9, 2023).

The operative complaint is the Pharmacies' SAC. The Pharmacies filed the SAC on October 19, 2020, after the Court dismissed the Pharmacies' First Amended Consolidated Class Action Complaint ("FAC"), ECF No. 52, without prejudice for failure to state a claim upon which relief may be granted. *In re Surescripts Antitrust Litig. (Surescripts)*, No. 19-cv-6627, 2020 WL 4905692, at *6 (N.D. Ill. Aug. 19, 2020). The Court found that in the FAC, the plaintiffs had not plausibly alleged antitrust standing as direct purchasers under the doctrine of *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), which generally bars indirect purchasers from bringing federal antitrust actions for damages. *Id.* at 745-47; *see also id.* at 728 n.7 (distinguishing antitrust standing from Article III standing). The FAC invoked only federal law in support of the Pharmacies' claims. FAC ¶ 1. The SAC supplemented the FAC's legal theories by reasserting the Pharmacies' claims for damages under state antitrust statutes that ostensibly permit suits by indirect purchasers. *See* SAC ¶ 317-328. In addition, the SAC added detail in support of the Pharmacies' direct purchaser status. *See id.* at ¶¶ 15-23, 27-29, 51-100. Both defendants moved again to dismiss pursuant to Rule 12(b)(6), based in part on the *Illinois Brick* doctrine. This time, the Court denied the motions to dismiss. *In re Surescripts Antitrust Litig.*, 608 F. Supp. 3d 629, 656 (N.D. Ill. 2022). The Court held the defendants' *Illinois Brick* argument to be premature because the state-law theories invoked by the Pharmacies in the SAC "are ostensibly indifferent to direct purchaser status,[4] making

---

[4] The defendants did not argue that the direct-purchaser rule applied to any of the asserted state-law theories. *Id.* n.6.

resolution of the defendants' *Illinois Brick* argument superfluous" at the motion-to-dismiss stage. *Id.* at 639. The Pharmacies' direct purchaser status remains at issue.

Having survived the defendants' motions to dismiss, the action proceeded to discovery, which started on July 11, 2022. On February 21, 2023, Surescripts filed its motion to compel discovery.[5] Fact discovery closed on July 13, 2023, with Surescripts' motion still pending.

## DISCUSSION

Federal Rule of Civil Procedure 26(b)(1) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* Notably, the 2015 amendments to Rule 26(b)(1) "subtly narrowed the concept of relevance for purposes of discovery. They deleted from Rule 26 a party's ability, for good cause, to obtain discovery of any information relevant to the subject matter of the case, and the notion that information is discoverable, even if not directly relevant, if it is reasonably calculated to lead to the discovery of admissible evidence." *Ye v. Cliff Veissman, Inc.*, No. 14-CV-01531, 2016 WL 95094, at *2 (N.D. Ill. Mar. 7, 2016). In addition, the 2015 amendments emphasized proportionality by moving the proportionality requirement into Rule 26(b)(1).

Rule 26(b)(2)(C) dictates that discovery shall be limited by the Court "if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." To resolve a discovery dispute, the Court must first determine whether the proposed discovery is nonprivileged and

---

[5] Allscripts purported to join Surescripts' motion on February 23, 2023. Def. Allscripts' Notice of Joinder, ECF No. 250. The Pharmacies "do not concede" that Allscripts has standing to join Surescripts' motion because Allscripts did not propound the disputed discovery requests. Pls.' Resp. Br. 2 n.1. That is true, but has no bearing on the resolution of the motion and the plaintiffs do not argue that Allscripts should be denied access to any discovery materials obtained by Surescripts as the result of its motion.

relevant "to any party's claim or defense," and if so, the Court must then determine whether the proposed discovery is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 26(b)(1) incorporates six proportionality factors: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

Discovery disputes are common; dispositive guidance as to how to resolve them is not. This is partly because decisions about whether to limit discovery often turn on case-specific facts. In addition, in the absence of firm rules—district courts have broad discretion in managing discovery and discovery orders are rarely appealed—judges have adopted different and sometimes conflicting approaches to resolving discovery disputes.

Importantly for this case, district courts are split over which party bears the burden on the issue of relevance. Surescripts asks this Court to place the initial burden of showing that requested discovery is irrelevant on the Pharmacies. In describing the applicable legal standard, Surescripts quotes a district court's statement that "the burden rests upon the objecting party to show why a particular discovery request is improper." Def.'s Mot. Compel 6-7 (quoting *Restoration Hardware, Inc. v. Haynes Furniture Co.*, No. 16 CV 10665, 2017 WL 3597517, at *1 (N.D.Ill. May 22, 2017)). In addition, Surescripts' argument for why this Court should compel downstream discovery relies heavily on an opinion by another judge in this district, *In re Turkey Antitrust Litig.*, No. 19 C 8318, 2021 WL 6428398 (N.D. Ill. Dec. 16, 2021), that appears to place the initial burden of showing that requested discovery is irrelevant on the objecting party. *Id*. at *5; Def.'s Reply Br. 4. However, other judges have adopted a burden-shifting approach that places the initial burden on the issue of relevance on the requesting party. Under this approach, the party that brings the

6

motion to compel bears the initial burden of showing that the requested discovery is relevant, then the burden shifts to the objecting party to show why the request is improper. *See, e.g. Ledonne v. Schuster*, No. 22 C 2157, 2023 WL 2499881, at *1 (N.D. Ill. Mar. 14, 2023); *Wall v. Reliance Standard Life Ins. Co.*, 341 F.R.D. 1 (D.D.C. 2022); *see also DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 978 (N.D. Ill. 2021) ("Under general discovery principles, the party seeking to compel discovery has the burden of showing relevance."). Few opinions acknowledge the split over which party bears the burden or rationalize a chosen approach. For an exception, see *Jewish War Veterans of the U.S. of Am., Inc. v. Gates*, 506 F. Supp. 2d 30, 42 n.3 (D.D.C. 2007) (adopting the burden-shifting approach as "the majority view").

This Court must decide which approach to adopt because, as will become clear, the burden on the issue of relevance is determinative in this case. The Seventh Circuit has not mandated a particular approach, and none of the decisions cited above are controlling. "District judges . . . must not treat decisions *by other district judges* [*or magistrate judges*] . . . as controlling, unless of course the doctrine of res judicata or of collateral estoppel applies. Such decisions will normally be entitled to no more weight than their intrinsic persuasiveness merits." *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1124 (7th Cir. 1987). This Court is persuaded by the burden-shifting approach. Rule 26(b)(1) restricts the scope of discovery to "matter that is relevant to any party's claim or defense." That is, relevance is a necessary condition for discovery to be proper. If the Court lacks information about relevance, then the Rule 26(b)(1) standard is not met, even though the objecting party has not affirmatively shown irrelevance. Therefore, the Court places an initial burden of showing relevance on the party requesting discovery.

Since 2015, proportionality is also an element of the Rule 26(b)(1) standard. However, the 2015 advisory committee's note to Rule 26(b)(1) clarifies that "the change does not place on the

party seeking discovery the burden of addressing all proportionality considerations." Rather, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." *Id*. The moving party "should be able to explain the ways in which the underlying information bears on the issues," while the nonmoving party "ordinarily has far better information—perhaps the only information—with respect to" undue burden or expense and should provide that information. *Id*. "The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." *Id*. The Court follows this guidance. Furthermore, the Court notes that a shared the burden of showing proportionality accords with the general principle that the litigant with superior access to the proof bears the burden on an issue. *See Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 60 (2005). The objecting party's far better and perhaps exclusive access to proof of undue burden and expense distinguishes the issue of proportionality from the issue of relevance, on which the moving party has access to proof and, thus appropriately, bears the initial burden.

With this framework in mind, the Court turns to the two categories of proposed discovery that Surescripts seeks to compel from the Pharmacies. For each category, the Court determines whether the discovery or some subset falls within the scope defined by Rule 26(b)(1).

### A.      Downstream Discovery

Surescripts seeks an order compelling responses to two document requests for downstream discovery. Those requests describe documents regarding the Pharmacies' revenues, costs, and profits, and documents related to the Pharmacies' determination and/or negotiation of the prices they charge consumers or payors. Def.'s Mot. Compel 4-5. To succeed on their claims, the Pharmacies must establish a violation of antitrust law, injury and causation, and damages. *See Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104-5 (2d Cir. 2007)

(describing the elements of an antitrust claim). Surescripts argues that downstream discovery is probative on the issues of injury and damages because this information will allow Surescripts to determine whether the Pharmacies passed on any alleged overcharges to their customers. Def.'s Mot. Compel 7-11; *see also* Def.'s Reply Br. 2-7. Surescripts concedes that the federal antitrust laws do not usually allow for a pass-on defense, so downstream discovery is usually irrelevant in an antitrust case premised solely on federal law. Def.'s Mot. Compel 7. However, Surescripts alleges that downstream discovery is nevertheless relevant in this case because the Pharmacies have sued Surescripts under state antitrust laws that permit a pass-on defense, including the antitrust laws of Michigan, Illinois, Minnesota, New York, and New Mexico. *Id.* at 8-9.

The Pharmacies respond that no pass-on defense is available in this case and, alternatively, that Surescripts' discovery requests are overbroad. Pls.' Resp. Br. 2-11. First, the Pharmacies contest Surescripts' interpretation of state law. The Pharmacies point out that Surescripts has only identified five states' antitrust laws as permitting a pass-on defense. *Id.* at 4. Of these, the Pharmacies acknowledge only one, Michigan's, as providing a pass-on defense in a case brought by plaintiffs that purchase the relevant product at only one level of a manufacture, production, or distribution chain—in contrast to the situation where multiple levels of purchasers have sued (*e.g.*, direct and indirect purchasers). *Id.* at 4 n.3. Second, the Pharmacies argue that regardless of whether the applicable state antitrust statutes permit a pass-on defense, that defense is unavailable in this case because the Pharmacies are end consumers of routing services; no downstream consumers exist. *Id.* at 6-9; Pls.' Sur-Reply Br. 1-3. In the alternative, if the Court finds that some downstream discovery is relevant, the Pharmacies argue that the Court should limit the scope of discovery to downstream discovery regarding prescription medication sales in states where the Court finds that a pass-on defense is available. Pls.' Resp. Br. 10-11.

The Court starts with the issue of relevance. To carry its burden on this issue, Surescripts must explain why downstream discovery is relevant to a party's claim or defense. Surescripts' explanation is that downstream discovery will allow it to investigate whether the Pharmacies passed on any alleged overcharges to their customers, which, if true, is relevant to a pass-on defense, which the state antitrust laws invoked by the Pharmacies permit Surescripts to assert. The Pharmacies dispute two links in this chain of relevance: first, whether the state antitrust laws invoked by the Pharmacies permit a pass-on defense under circumstances of this case (the final link) and, second, whether downstream discovery could prove that the Pharmacies passed on any alleged overcharges. The Court begins its analysis of relevance with the final link in the chain of relevance: has Surescripts shown that any of the state antitrust laws invoked by the Pharmacies permit Surescripts to assert a pass-on defense in this case?

In the SAC, the Pharmacies invoke the antitrust laws of thirty states. As explained in the background section of this opinion, the Pharmacies allege state law theories to avoid the *Illinois Brick* doctrine, which generally bars indirect purchasers from bringing antitrust claims. 431 U.S. at 745-47. The state antitrust laws invoked by the Pharmacies all belong to states that have rejected the *Illinois Brick* doctrine by passing *Illinois Brick* repealer statutes or through case law.[6] SAC 79 n.9. These states' common rejection of the direct purchaser rule is the only information that the Court has about whether twenty-four of the states permit a pass-on defense. Surescripts asserts ambiguously that "many" of the thirty states permit a pass-on defense, but Surescripts only names five of the "many" states, which are the only states whose antitrust laws Surescripts analyses. Def.'s Resp. Br. 8-9. Before turning to the five named states (plus California, whose supreme court

---

[6] In *California v. ARC Am. Corp.*, 490 U.S. 93 (1989), the Supreme Court held that *Illinois Brick* repealer statues were not preempted by federal law. *Id.* at 101-3.

has issued a pertinent opinion), the Court explains why an *Illinois Brick* repealer statute or analogous case law is not enough, on its own, to answer whether a state would be likely to permit a pass-on defense in this case.

*Illinois Brick* is related to a Supreme Court case decided nine years earlier, *Hanover Shoe*, 392 U.S. 481 (1968), that eliminated the pass-on defense under federal law with limited exceptions (none of which are relevant in this case). *Id.* at 487-494. Some judges have described *Hanover Shoe* and *Illinois Brick* as counterparts. *See, e.g., Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1526 (2019) (Gorsuch, J., dissenting) ("*Illinois Brick* was just the other side of the coin [from *Hanover Shoe*].")"; *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1164 n.10 (3d Cir. 1993) ("In *Hanover Shoe*, the Court rejected the pass-on theory for a seller and in *Illinois Brick* made the symmetrical decision, consistent with *Hanover*, to disallow an offensive use of the theory."). In short, the rejection of a pass-on defense and adoption of a direct purchaser rule serves to limit the scope of federal claims to a single layer of a manufacture, production, or distribution chain.

The logical relationship between these two decisions raises the question of whether *Illinois Brick* repealer states likewise rejected *Hanover Shoe*. State-law precedent provides limited guidance. The Class Action Fairness Act of 2005, 28 U.S.C. § 1332, pushed most antitrust class actions into federal court, with the consequence that relatively little binding precedent exists on state antitrust statutes. However, enough evidence exists to demonstrate that these two decisions are not conjoined twins; a state could reject the *Illinois Brick* doctrine while adopting some version of the *Hanover Shoe* rule. Indeed, three dissenting justices in *Illinois Brick* sought to allow indirect purchaser suits without overturning *Hanover Shoe*. 431 U.S. at 753-54 (Brennan, J., dissenting). And in *Clayworth v. Pfizer, Inc.*, 233 P.3d 1066 (Cal. 2010), the California Supreme Court held that "for state antitrust purposes, the *Hanover Shoe* rule should apply even as indirect purchasers

are allowed to sue." *Id.* at 1086. Accordingly, the Court cannot infer wholesale rejection of federal law regarding the pass-on theory from an *Illinois Brick* repealer statute or analogous case law. In other words, the answer to whether a state permits a pass-one defense is more complicated than whether the state has adopted or rejected the direct purchaser rule of *Illinois Brick*, so the Court needs more information.

Surescripts cites evidence purporting to show that five states permit a pass-on defense, and *Clayworth* decides the scope of the pass-on defense in California. However, as to the other twenty-four states whose antitrust laws are at issue, neither party has provided more information. Those states are Arizona, Connecticut, the District of Columbia, Florida, Iowa, Kansas, Maine, Maryland, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin. In the absence of adequate analysis from the parties, and following the lead of other district courts, "the Court will decline to undertake the back-breaking labor involved in deciphering the state of antitrust pass-on defense in each of those states." *In re Niaspan Antitrust Litig.*, 464 F. Supp. 3d 678, 722 n.11 (E.D. Pa. 2020) (cleaned up). Accordingly, the burden on the issue of relevance is determinative. As the moving party, Surescripts bears the initial burden of showing the relevance of the requested discovery. Here, the final link in the chain of relevance—proof that state antitrust law would likely permit a pass-on defense in this case—is missing as to at least these twenty-four states. As a result, Surescripts has failed to show that downstream discovery is relevant to defend against the Pharmacies' claims under those states' antitrust laws.

The status of the antitrust pass-on defense in six states—California plus the five states named by Surescripts (Michigan, Illinois, Minnesota, New York, and New Mexico)—remains in question. As to these states, the Court has more information. Unsurprisingly, perhaps, Surescripts

does not mention California. However, California is one of the thirty states whose antitrust laws the Pharmacies allege the defendants violated. In addition, as far as this Court is aware, the California Supreme Court is the only state supreme court to have decided whether a pass-on defense exists under state law, and *Clayworth* generally rejects the pass-on defense. Therefore, *Clayworth* is important, and the Court explains in some detail why the decision bars Surescripts from asserting a pass-on defense as to the Pharmacies' California-law claims. The Court relies on *Clayworth* to illustrate the complexity of the required analysis and, later, as a foil to Surescripts' arguments regarding the status of the pass-on defense in the other remaining states.

In 1978, in direct response to *Illinois Brick*, California's legislature amended California's antitrust statute, the Cartwright Act, Bus. & Prof. Code, § 16700 et seq., to provide that state law permits indirect purchasers to sue. *Clayworth*, 233 P.3d at 1070. The further question of how damages should be allocated, or whether the Cartwright Act permits a pass-on defense, did not reach California's Supreme Court until *Clayworth* in 2010. The Cartwright Act authorizes "[a]ny person who is injured in his or her business or property" by actions forbidden under the Act to recover "three times the damages sustained." § 16750(a). Finding this text ambiguous and finding no specific legislative intent regarding the pass-on theory, the California Supreme Court turned to general legislative intent. *Id*. at 1074-78. It concluded that "the Legislature's actions in response to *Illinois Brick* and related federal statutory amendments reveal a clear legislative preference for the *Hanover Shoe* rule." *Id*. at 1070. In addition, the *Clayworth* Court concluded that the *Hanover Shoe* rule "is the one most closely in accord with the Legislature's overarching goals of maximizing effective deterrence of antitrust violations, enforcing the state's antitrust laws against those violations that do occur, and ensuring disgorgement of any ill-gotten proceeds." *Id*. Eliminating the pass-on defense, it reasoned, "streamlines antitrust trials, renders the process of

13

proving antitrust damages less daunting, and ultimately enhances enforcement." *Id.* at 1084. Accordingly, the California Supreme Court held that "under the Cartwright Act, as under federal law, generally no pass-on defense is permitted." *Id*. at 1070.

Along the way to this holding, the *Clayworth* Court acknowledged two arguments against the *Hanover Shoe* rule: First, the rule may overcompensate plaintiffs who have passed on overcharges. *Id*. at 1083. Second, "in light of [California's] *Illinois Brick* repealer statute, cases may arise where application of the *Hanover Shoe* rule raises the prospect of duplicative recovery." *Id*. at 1086. Such cases are limited to those where multiple levels of purchasers have sued or may sue (what the *Illinois Brick* doctrine prevents by restricting antitrust standing to direct purchasers, or one level of purchaser). The *Clayworth* Court was unpersuaded by the first argument, explaining that "[t]he goal of deterring antitrust violations and concerns that a given private party may receive a windfall are not of equal weight."[7] *Id*. at 1083.

To address the second issue, however, the *Clayworth* Court recognized a limited exception to the *Hanover Shoe* rule under California law "as needed to avoid duplication in the recovery of damages." *Id*. at 1086. It explained the scope of the exception as follows:

> In instances where multiple levels of purchasers have sued, or where a risk remains they may sue, trial courts and parties have at their disposal and may employ joinder, interpleader, consolidation, and like procedural devices to bring all claimants before the court. In such cases, if damages must be allocated among the various levels of injured purchasers, the bar on consideration of pass-on evidence must

---

[7] Surescripts decries that a rule barring a pass-on defense "unless there is a risk of duplicative [recovery] would lead to antitrust plaintiffs recovering damages for injuries they did not incur," and Surescripts asserts "[t]hat is not how antitrust damages work." Def.'s Reply Br. 6. Contrary to Superscript's blanket assertion unsupported by case law, "that" is how antitrust damages work in California and federally. The *Hanover Shoe* rule and the treble damages provision of the Clayton Act, 15 U.S.C. § 15(a), both allow antitrust plaintiffs to receive "a potential windfall," Def.'s Reply Br. 6; *see Clayworth*, 233 P.3d at 1083 ("[T]reble damages may overcompensate injured plaintiffs, but they do so in order to maximize deterrence.").

necessarily be lifted; defendants may assert a pass-on defense as needed to avoid duplication in the recovery of damages.

*Id.* (emphasis added). These circumstances were not met in *Clayworth*, so the exception did not apply, because no suit had "been filed that might pose a risk of duplicative recovery, and the statute of limitations for the period at issue ha[d] long since expired." *Id.*

Here, too, the exception does not apply, so *Clayworth* bars Surescripts from asserting a pass-on defense to the Pharmacies' claims under the Cartwright Act. The Pharmacies seek to represent a putative class of "[a]ll pharmacies in the United States and its territories who paid for e-prescriptions routed through the Surescripts network during the period September 21, 2010, through the date of trial." SAC ¶ 274. Surescripts' electronic network connects physicians, who send e-prescriptions to pharmacies through the network, and pharmacies, who accept information from the prescribing physicians. *Id.* at ¶ 44-50. The record indicates that pharmacies purchase Surescripts' e-prescription routing services by contracting directly with Surescripts or, in the vast majority of cases today, through pharmacy technology vendors ("PTVs"). *Id.* at ¶ 121 n.8. If PTVs, physicians, patients, or patients' health insurers had also filed suit, this might pose a risk of duplicative recovery. However, none have sued, nor does Surescripts argue that they may sue. Therefore, there is no risk of duplicative recovery. In this circumstance, the Cartwright Act does not permit a pass-on defense. As a result, the Court concludes that downstream discovery is irrelevant to defending against the Pharmacies' claims under the Cartwright Act.

Surescripts ignores California law and that of most of the other states the SAC identifies, resting its entitlement to the requested discovery on the antitrust laws of five states that purportedly allow the defendants to assert a "pass-on" defense: Michigan, Illinois, Wisconsin, New York, and New Mexico. Def.'s Mot. Compel 2. The highest courts in these states have not ruled on whether or in what circumstances the antitrust laws of their states allow a pass-on defense. For its

interpretations of state law, Surescripts relies on statutory text and opinions from federal district courts sitting in diversity. *Id.* at 8-9. The Pharmacies contest Surescripts' interpretations. As follows, the Court evaluates the parties' arguments regarding the five remaining states' laws.

Of the five state antitrust statutes discussed by Surescripts, three—Michigan's, Illinois', and Minnesota's—are silent about whether they permit a pass-on defense. In support of the proposition that these states permit a pass-on defense, Surescripts cites two federal district court opinions: *In re Vitamins Antitrust Litig.*, 259 F. Supp. 2d 1 (D.D.C. 2003) (Hogan, J.), interpreting Michigan law, and *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 9-cv-4997, 2012 WL 6709621 (N.D. Cal. Dec. 26, 2012) (Illston, J.), *aff'd*, 637 F. App'x 981 (9th Cir. 2016), interpreting Illinois and Minnesota law. Def.'s Mot. Compel 8-9. The Pharmacies criticize Surescripts for relying on nonbinding precedent. Pls.' Resp. Br. 4. However, the Pharmacies do not criticize the reasoning of those opinions and even "acknowledge that the Michigan Court of Appeals has held that a pass-through defense exists under the [Michigan Antitrust Reform Act ("MARA"), Mich. Comp. Laws § 445.771 *et seq.*]," which accords with Judge Hogan's opinion in *Vitamins*. *Id.* at 4 n.3. In the absence of any argument for why this Court should reject the holdings in *Vitamins* and *Flat Panel*, this Court does not reexamine the underlying state laws interpreted in those cases, but it does assess the opinions to determine whether the relevant holdings from those cases extend to the circumstances of this case or are distinguishable.

In *Vitamins,* Judge Hogan interpreted the MARA in the context of an action in which Kellogg Company ("Kellogg") alleged that vitamin manufacturers conspired to fix prices and commit other violations of both federal and Michigan antitrust laws. Kellogg brought its MARA claims as an indirect purchaser, leveraging Michigan's *Illinois Brick* repealer statute. *Vitamins*, 259 F. Supp. at *2. Kellogg filed a motion in limine asking Judge Hogan to rule that evidence that

Kellogg passed on overcharges was irrelevant under Michigan law. *Id*. Judge Hogan framed the issue as a question of how Michigan defines the term "actual damages" in the MARA. *Id.* at *6. To answer this question, he turned to "Michigan damages principles which generally limit damages to compensation for actual loss"; legislative history indicating that the Michigan Legislature intended to limit the effect of an *Illinois Brick* repealer statute "via the practical boundaries facing potential indirect purchaser litigants"; the lack of a trebling provision in the MARA, indicating "that the Michigan Legislature intended to limit damages and to impose damages beyond actual damage only in limited circumstances"; and Michigan's policy against punitive damages. *Id.* at *6-8. Based on this evidence, Judge Hogan concluded that "Michigan law only permits the recovery of 'actual damages' for antitrust claims," measured as actual loss.[8] *Id.* at *8. "As such, in order to give proper effect to the term 'actual damages' under the MARA," Judge Hogan held that the vitamin manufacturers could challenge Kellogg's damage estimates with a pass-on defense. *Id.* at *8-9.

Judge Hogan's opinion recognized a universal antitrust pass-on defense under Michigan law, regardless of whether multiple layers of purchasers sue. Under this precedent, Michigan's pass-on defense is broader than California's. This difference stems from the *Vitamins* and *Clayworth* courts' differing conclusions about the primary purpose of damages under Michigan and California antitrust law, respectively. While the California Supreme Court was more concerned about deterrence than overcompensating plaintiffs, Judge Hogan characterized the MARA as primarily concerned with appropriately compensating injured plaintiffs, including avoiding overcompensation. This difference matters here. As already discussed, Surescripts may

---

[8] Actual loss includes overcharges absorbed by the plaintiff and lost sales from passing on any overcharge, less avoided costs. *See Hanover Shoe*, 392 U.S. at 493.

not assert a pass-on defense under California law in this case. However, Judge Hogan's holding would allow Surescripts to assert a pass-on defense under Michigan law.[9] Applying the holding in *Vitamins*, the Court determines that downstream discovery is relevant to a pass-on defense as to the Pharmacies' Michigan-law antitrust claims.

Judge Illston's holding regarding Illinois and Minnesota antitrust law is narrower than the related holdings in *Clayworth* and in *Vitamins*. Judge Illston's ruling related to four cases brought by indirect purchasers of TFL-LCD panels ("flat panels"). The plaintiffs all purchased finished products containing flat panels and resold those products to subsequent purchasers. *Flat Panel*, 2012 WL 6709621 at *1. The four cases had been centralized in a multidistrict litigation ("MDL"). That MDL encompassed claims brought by "multiple levels of purchasers alleging overlapping and/or identical claims," some of which had already settled by the time Judge Illston ruled on the availability of a pass-on defense. *Id.* at *2. These circumstances created "a very real prospect of duplicative recovery." *Id.* Deciding an issue of first impression, Judge Illston held that the defendants could assert a pass-on defense under Illinois and Minnesota law because the relevant state statutes each permit a court presiding over an antitrust action to take steps to avoid duplicative recovery. *Id.* at *4-7; *see* 740 I.L.C.S. 10/7(2) ("[I]n any case in which claims are asserted against a defendant by both direct and indirect purchasers, the court shall take all steps necessary to avoid duplicate liability for the same injury. . . ."); Minn. Stat. § 325D.57 ("In any subsequent action arising from the same conduct, the court may take any steps necessary to avoid duplicative

---

[9] Because Kellogg brought its MARA claims as an indirect purchaser, the issue before Judge Hogan, narrowly construed, was only whether the MARA permits a pass-on defense to indirect purchaser claims (not necessarily direct purchaser claims). However, because Judge Hogan answered that question based on the definition of the term "actual damages" in the MARA, the Court concludes that the holding in *Vitamins* applies equally to cases brought by direct and indirect purchasers.

recovery against a defendant."). Judge Illston did not need to decide whether state antitrust law provides for a pass-on defense in an action, like this one, in which there is no risk of duplicative recovery, and she did not decide the question, unlike the *Clayworth* and *Vitamins* courts.

As discussed above in the context of applying *Clayworth*, there is no risk of duplicative recovery under the circumstances of the action before this Court. Multiple levels of purchasers have not sued, and Surescripts has not identified a risk that other levels of purchasers may sue. Thus, *Flat Panel* is distinguishable and provides no support for Surescripts' argument that either Illinois or Minnesota law permits Surescripts to assert a pass-on defense. Surescripts provides no other analysis of Illinois or Minnesota law. Accordingly, Surescripts has failed to show that downstream discovery is relevant to a defense available under Illinois or Minnesota law.

For its interpretation of New York and New Mexico antitrust law, Surescripts relies on statutory text. Def.'s Mot. Compel 9. Unlike the Michigan, Illinois, and Minnesota statutes discussed above, the New York and New Mexico antitrust statutes invoked by the Pharmacies explicitly provide for a pass-on defense. New York law provides that:

> In any action pursuant to this section, the fact that the state, or any political subdivision or public authority of the state, or any person who has sustained damages by reason of violation of this section has not dealt directly with the defendant shall not bar or otherwise limit recovery; provided, however, that in any action in which claims are asserted against a defendant by both direct and indirect purchasers, the court shall take all steps necessary to avoid duplicate liability, including but not limited to the transfer and consolidation of all related actions. In actions where both direct and indirect purchasers are involved, a defendant shall be entitled to prove as a partial or complete defense to a claim for damages that the illegal overcharge has been passed on to others who are themselves entitled to recover so as to avoid duplication of recovery of damages.

New York Gen. Bus. Law § 340(6). New Mexico law provides that:

> In any action under this section, any defendant, as a partial or complete defense against a damage claim, may, in order to avoid duplicative liability, be entitled to prove that the plaintiff purchaser or seller in the chain of manufacture, production, or distribution who paid any overcharge or received any underpayment, passed on all or any part of such overcharge or underpayment to another purchaser or seller in such chain.

N.M. Stat. Ann. § 57-1-3(C).

The Pharmacies dispute that these provisions provide for a pass-on defense under the circumstances of this case. Specifically, the Pharmacies argue that the New York statute only provides for a pass-on defense "[i]n actions where both direct and indirect purchasers are involved," which is not the case here. Pls.' Resp. Br. 5. The Court agrees with the Pharmacies that the text of New York's statute does not clearly provide for a pass-on defense where only one level of purchaser has sued, as here. Likewise, because of the qualifier "in order to avoid duplicative liability" in New Mexico's statute (which was omitted by Surescripts in the quote included in their motion, Def.'s Mot. Compel 9), the Court finds that New Mexico's statute does not clearly provide for a pass-on defense in such circumstances.[10] Surescripts provides no further authority to support its assertion that New York's and New Mexico's antitrust laws permit a pass-on defense in this case. Therefore, again, Surescripts has failed to show that downstream discovery is relevant to a defense available under the antitrust laws of these states.

In sum, Surescripts' motion does not persuade the Court that any state other than Michigan would permit a pass-on defense. Based on the sources discussed so far, the Court concludes for purposes this motion, and this case, that Michigan law permits Surescripts to assert a pass-on defense. Surescripts has failed to establish that any other state would be likely to permit a pass-on defense in this case. Therefore, downstream discovery is only relevant to the extent that it is relevant to Surescripts' pass-on defense under Michigan antitrust law.

---

[10] The Pharmacies make a different argument for why the New Mexico statute does not provide for a pass-on defense under the present circumstances: they argue that that there is no downstream purchaser "in the chain of manufacture, production, or distribution" for e-prescription routing services. Pls.' Resp. Br. 5. The Court does not reach this argument here because it agrees with the Pharmacies on different grounds. It will address later in the opinion the more general argument that the Pharmacies are end purchasers, so no pass-on defense is applicable.

Having decided that one state antitrust law at issue permits a pass-on defense in this case, the Court turns to the second relevance dispute between the parties. The Pharmacies argue that, even if the state antitrust statutes at issue permit a pass-on defense, downstream discovery is irrelevant in this case because the Pharmacies are end purchasers of e-prescription routing services. Pls.' Resp. Br. 6-9. In other words, the Pharmacies contend that they have no downstream consumers to whom they could pass on overcharges. The Pharmacies argue that this is true "because [they] do not resell routing services—they sell prescription medications." Pl's Resp. Br. 9; *see also id.* ("What Plaintiffs buy from Defendants and what they sell to their customers are not the same things, because what they buy is not a tangible 'thing' at all, and what they sell is."). Surescripts responds that whether the Pharmacies are end purchasers is a fact-intensive question inappropriate for resolution on a motion to compel. Def.'s Reply Br. 6.

On this issue, the Court agrees with Surescripts. Indeed, the Court sees no reason why the goods-versus-services distinction drawn by the Pharmacies bears on end-purchaser status. The pass-on defense involves showing that a plaintiff who paid a higher price for inputs passed on some of the additional cost to his customers in the form of a higher price. Whether the plaintiff transformed those inputs is beside the point. *Cf. Lorix v. Crompton Corp.*, 736 N.W.2d 619, 633 (Minn. 2007) (in a case concerning indirect purchaser standing, finding it "beside the point that, in this case, the price-fixed component may or may not be present in the finished product.") Routing services are an input to prescription medications, which the Pharmacies sell to patients. *See* Pls.' Sur-Reply Br. 1-3. Therefore, downstream discovery is relevant to determining whether the Pharmacies, who allege that they were overcharged for routing services, passed on some of that additional cost to patients (or other payors) in the form of a higher price for prescription medications, which, if true, is relevant to a pass-on defense, which Michigan law permits.

The final issue is the proper geographic scope of downstream discovery, which is both a relevance and proportionality issue. The Pharmacies "request that the Court limit the scope of production to documents pertaining to financial data on sales of prescription medications . . . in states where the Court might agree with [Surescripts] that a pass-through defense is potentially available." Pls.' Resp. Br. 11 n.6. Surescripts clarifies that it only seeks financial data related to the Pharmacies' sales of prescriptions, but it asserts that because "some of the state statutes at issue" permit a pass-on defense in this case, the "defendants are entitled to" the requested discovery without a geographical limit. Def.'s Reply Br. 4. The parties do not dispute that downstream discovery regarding the Pharmacies' sales of prescription medications in Michigan is proper, given the Court's determination that Surescripts may assert a pass-on defense under Michigan law. Therefore, the remaining issue before the Court is whether non-Michigan downstream discovery is relevant and, if so, proportional to the needs of the case.

Surescripts has not explained why downstream discovery regarding the Pharmacies' sales of prescription medication sales in states whose antitrust laws do not permit a pass-on defense is relevant. In their motion to compel briefing, the parties do not discuss choice-of-law issues. For purposes this motion, the Court assumes that Michigan antitrust law only applies to alleged overcharges paid by the Pharmacies for e-prescription routing services associated with prescription medications sold in Michigan. Therefore, to prevail on a pass-on defense under Michigan law, Surescripts would need to prove that the Pharmacies passed on overcharges by charging higher prices for prescription medications sold in Michigan. Surescripts has not explained why downstream discovery regarding prescription medications sold in states other than Michigan bears on whether the Pharmacies charged higher prices in Michigan. Therefore, Surescripts has failed to persuade the Court that non-Michigan downstream discovery is relevant.

Even if non-Michigan downstream discovery was somewhat relevant, the Court doubts that this discovery would be proportional to the needs of the case. The high cost of antitrust discovery is well documented. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559-560 (2007) (collecting sources). That potential expense is obvious enough here, even though the Pharmacies, surprisingly, do not provide any information with respect to the burden or expense of downstream discovery. In *Twombly*, the Supreme Court raised the concern that "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases." *Id*. at 560. Discovery goes both ways, and the threat of discovery expense could likewise push plaintiffs to settle for reasons other than the merits of a case. The proportionality prong of Rule 26(b)(1) helps to ensure that discovery serves, rather than counters, the goal of resolving cases on the merits, regardless of which party requests discovery and the intentions of that party in requesting discovery. To the extent that downstream discovery regarding prescription medications sold in states other than Michigan has some benefit to Surescripts' pass-on defense under Michigan antitrust law, the Court doubts that this benefit outweighs the expense of the proposed discovery, which is a key proportionality factor. However, because Surescripts has failed to show that non-Michigan discovery is relevant, the Court does not decide whether this discovery is proportional to the needs of the case.

For the foregoing reasons, the Court compels the Pharmacies to produce downstream discovery regarding the Pharmacies' sales of prescription medications in Michigan. To the extent that Surescripts seeks other downstream discovery, its motion to compel is denied.

### B. FTC Communications

Surescripts also seeks an order compelling the Pharmacies to produce a privilege log identifying Plaintiffs' counsel's communications with the FTC regarding their antitrust claims against Surescripts. Def.'s Mot. Compel 1. Surescripts argues that this proposed discovery is "relevant to Plaintiffs' credibility and bias" and "will help Surescripts understand the basis for

Plaintiffs' claims and would likely demonstrate that Plaintiffs' lawsuit is driven by Plaintiffs' counsel—not Plaintiffs—who are simply piggy-backing on the FTC's allegations against Surescripts in the hopes of obtaining a quick payout." *Id.* at 11. The Pharmacies respond that Surescripts' relevance argument "is nonsensical." Pls.' Resp. Br. 13. The defendants are already aware that Plaintiffs' counsel has communicated with the FTC about the Pharmacies' antitrust case, and such communications do not "in any way suggest bias." *Id*.

The Court cannot discern a sensical relevance argument in Surescripts' briefing. "[I]nformation that could be used to impeach a likely witness," including evidence that undermines credibility or evidence of bias, is relevant to the parties' claims or defenses. Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment. However, Surescripts fails to explain how Plaintiffs' counsel's communications with the FTC could be used to impeach any likely (or even possible) witness. Even if the proposed discovery shows that the Pharmacies' "lawsuit is driven by Plaintiffs' counsel," Def.'s Mot. Compel 11, the Court does not discern a connection between such information and any likely witness's credibility or bias. Accordingly, Surescripts has failed to show the relevance of Plaintiffs' counsel's communications with the FTC.

Relevance is a necessary characteristic of proper discovery under Rule 26(b)(1). Because Surescripts has failed to show the relevance of the proposed discovery, the Court does not need to consider other issues raised in the parties' motion to compel briefing. However, the Court briefly addresses the propriety of Plaintiffs' counsel's communications with the FTC because Surescripts is off-base. The fact that Plaintiffs' counsel has communicated with the FTC about the Pharmacies' claims does not suggest any impropriety. Indeed, the Pharmacies allege that Judge John D. Bates, who presided over the FTC action, ordered the parties in the FTC action to cooperate with each other and the parties in this action. *Id.* at 12. Furthermore, the Court notes that Plaintiffs' counsel

has wide latitude in developing the evidence and legal arguments in a case. *See* Model Rules of Prof. Conduct r. 1.2 (Am. Bar Ass'n 1983) (allocating authority over the means of achieving the client's objectives to counsel, subject to consultation). Any plaintiff bringing a suit for damages is presumably hoping for a "payout," and cooperating with the FTC to help achieve that objective would be proper behavior for Plaintiffs' counsel.

Based on lack of relevance, the Court declines to compel the Pharmacies to produce a privilege log. To this extent, Surescripts' motion to compel is denied.

\*   \*   \*

Accordingly, for the reasons stated above, the Court grants in part Surescripts' motion to compel and holds that the Pharmacies must produce downstream discovery regarding their sales of prescription medications in Michigan. The Court will reopen fact discovery for the limited purpose of complying with this Order. The parties are directed to confer regarding a reasonable schedule and to submit a status report, with an agreed or competing schedules if agreement cannot be reached, as to such extension.

Date: March 20, 2024

John J. Tharp, Jr.
United States District Judge